WILLIAM BRADLEY, Respondent, *v.* GEORGIE A. MCDONALD, as Executrix of JOHN B. MCDONALD, Deceased, et al., Appellants.

Contracts — construction of contract between sub-contractor and builder of the "Subway" railway in New York city — record examined and held that under the contract and the facts the sub-contractor is entitled to recover the amount demanded — objection to evidence — record examined, and held, that evidence was properly received — when judgment against defendant for materials furnished cannot be offset against plaintiff's claim herein — engineer's certificate, when waived.

1. One McDonald had a contract with the city of New York for the construction, operation and equipment of the "Subway" railway in that city. He entered into a contract with the defendant Rapid Transit Construction Company, wherein amongst other things it was to furnish the city security for the performance of the contract, and to receive and disburse all moneys that would become payable to McDonald under the contract. McDonald entered into a contract with plaintiff for the construction of part of the " Subway " by plaintiff, which referred to the contract with the Construction Company. The plaintiff brought this action against the defendants to recover a balance claimed to be due him under the contract and for extra and additional work performed and materials supplied in connection therewith. By the contract between McDonald and the Construction Company, the latter agreed to pay out of the moneys received by it all amounts payable by McDonald to sub-contractors, and at the commencement of plaintiff's action it had received from the city and retained moneys more than sufficient in amount to meet and discharge any claim of plaintiff's against it and McDonald. *Held*, that plaintiff has a right to recover from the Construction Company any amount due him. *Held*, that defendants by admissions and a practical construction of the contract evidenced their liability to respond to plaintiff for the work and materials for which judgment was granted.

2. The referee before whom the case was tried found as matter of fact that during the progress of the work under the contract, a special agreement was made between plaintiff and defendants for additional work and material to be furnished by the plaintiff under a system known as the "Force Account," wherein was prescribed

the method of keeping account of the work performed and materials supplied thereunder. *Held,* in view of the nature of the agreement between the parties, that the books and slips showing daily and monthly account of the work performed and materials furnished, pursuant to the provisions of said agreement, constituted a mutual account between the parties, and as such was binding upon them, and were competent as evidence of admissions by defendants and properly received in evidence.

3. Final payment was to be made to plaintiff, under his contract, within ninety days after completion of the same. The referee allowed interest on the amounts found due plaintiff from and after that time. *Held,* in view of the system under which such work was done, and the agreement between the parties, the accounts, etc., the amount due plaintiff was ascertainable by defendants within ninety days after the completion, and their failure to determine and pay the same entitled plaintiff to recover interest upon said sums.

4. The referee found for the plaintiff to the amount of over $42,000 on account of a claim for removal of material by reason of so-called slides based upon a special agreement as found by the referee between plaintiff and McDonald. *Held,* that such agreement was valid, being within the scope of the contract and the work was done under the contract as modified by the parties.

5. Statements of extra and additional work termed "excess sheets" are in evidence and show the total amount of excavation of earth and rock as being the quantities included by plaintiff in his statement of account. It was conceded that the sheets show the excess excavation outside of the net section correctly. The "excess sheets" did not separately state the amount of earth and rock excavation. For the purpose of showing the quantity of the work done under the special agreements, plaintiff called as a witness the engineer assigned to supervise the construction work on behalf of the city to establish the total amount of excess shown on the sheets and the amount which was due to the performance of the contract, upon the theory that the difference would be the amount performed by plaintiff under agreement with McDonald. The witness was permitted to testify from the sheets the fair typical amount of excess beyond the net section line in the construction of the subway under ordinary conditions, and stated in detail the actual and typical excess block by block. *Held,* under the circumstances of this case and the agreement between the parties, the evidence was properly received.

6. The referee found that prior to the commencement of the action the defendants waived the making and procuring of the final

certificate of the chief engineer of the Construction Company, which waiver was acquiesced in and acted upon by the plaintiff; that the certificate was unreasonably withheld by the defendants, and the failure to make it sooner was in fraud and violation of plaintiff's rights; that as finally made it was made upon a wrong theory and erroneous construction of plaintiff's contract. This finding of fact by the referee, having been unanimously affirmed, is conclusive upon the appellants.

7. The resident engineer of the Construction Company had an interview with McDonald at the latter's request, at which McDonald took up the various items of the plaintiff's claim. *Held*, that the evidence offered by plaintiff of conversations between the witness and McDonald were statements voluntarily and unqualifiedly made, were not adduced in the course of negotiations for a settlement and were properly received in evidence.

8. Defendants sought to offset a judgment obtained by a third party against McDonald for work done and materials furnished upon the ground that the plaintiff herein was liable therefor under his contract with McDonald. This plaintiff was not a party to that action and was not called upon to appear and defend it. Defendants failed to show what items, if any, included in the judgment, which was for a sum largely in excess of the sum defendants sought to establish as an offset, were for work which the plaintiff was obliged to perform and for which he has been paid. *Held*, that the evidence by the production of the judgment roll did not establish a liability on the part of plaintiff in favor of defendants, and that the claim was not established as a valid offset against him.

*Bradley* v. *McDonald*, 157 App. Div. 572, modified.

(Argued January 17, 1916; decided June 6, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 30, 1913, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George W. Wickersham, De Lancey Nicoll, Cornelius J. Sullivan, James L. Quackenbush, Alfred E. Mudge* and *Louis S. Carpenter* for appellants. It was reversible error to receive the plaintiff's account books, the monthly statements and the daily report slips based thereon, as

23

proof of the amount or cost of the work. (*Vosburgh* v. *Thayer*, 12 Johns. 461; *Dooley* v. *Moan*, 57 Hun, 535; *Griesheimer* v. *Tanenbaum*, 124 N. Y. 650; *Smith* v. *Rentz*, 131 N. Y. 169, 175; *Smith* v. *Smith*, 163 N. Y. 168; *Collins* v. *Carlin*, 106 App. Div. 204; *Merrill* v. *I. & O. R. R. Co.*, 16 Wend. 586; *Halsey* v. *Sinsebaugh*, 15 N. Y. 485; *Guy* v. *Mead*, 22 N. Y. 461; *Gould* v. *Conway*, 59 Barb. 355; *Mayor, etc.*, v. *S. A. R. R. Co.*, 102 N. Y. 572.) Error of law was committed in construing the provisions of plaintiff's sub-contract and in applying the same to the facts as found in regard to the work done on the surface and subsurface structures. (*Stokes* v. *Stokes*, 198 N. Y. 301; *Whelan* v. *Stuart*, 194 N. Y. 495; *Elterman* v. *Hyman*, 192 N. Y. 113; *Ripley* v. *Larmouth*, 56 Barb. 21; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482; *O'Brien* v. *Miller*, 168 U. S. 287; *Miller* v. *H., etc., Ry. Co.*, 90 N. Y. 430; *Kitching* v. *Brown*, 180 N. Y. 414; *Clark* v. *N. Y. L. Ins. & Trust Co.*, 64 N. Y. 33; *D., L. & W. R. R. Co.* v. *Bowns*, 58 N. Y. 573.) The referee erred in permitting the plaintiff to recover compensation additional to the lump sum payment for work on surface and subsurface structures clearly indicated upon the supplementary D drawings. (*Bremer* v. *Man. Ry. Co.*, 191 N. Y. 333; *Elterman* v. *Hyman*, 192 N. Y. 113; *Stokes* v. *Stokes*, 198 N. Y. 301; *Whelan* v. *Stuart*, 194 N. Y. 495.) Reversible error was committed in the admission and use of the testimony concerning McDonald's "recommendations" as to payment. (*Hinckley* v. *N. Y. C. & H. R. R. R. Co.*, 56 N. Y. 429; *Hatch* v. *Pryor*, 3 Keyes, 441; *Dunn* v. *Hewitt*, 2 Den. 637; *Southwick* v. *Hayden*, 7 Cow. 334; *Jennings* v. *Osborne*, 1 N. Y. S. R. 267; *Loveridge* v. *Hill*, 96 N. Y. 222; *Gommersall* v. *Crew*, 10 N. Y. Supp. 231.) The alleged "recommendations" were merely an offer to compromise, and not competent as admissions against interest. (*White* v. *O. D. S. S. Co.*, 102 N. Y. 660; *Tennant* v. *Dudley*, 144 N. Y. 504; *Roome* v. *Robinson*, 99 App. Div. 143;

*Franklin* v. *Hoadley,* 115 App. Div. 538; *Union Bank* v. *Deshel,* 139 App. Div. 217; *Home Ins. Co.* v. *B. Warehouse Co.,* 93 U. S. 527; *West* v. *Smith,* 101 U. S. 263.) The findings are insufficient to support a judgment in favor of the plaintiff in the absence of the chief engineer's certificate and determination prescribed as a condition precedent by the sub-contract. The ground upon which the referee permitted recovery in the absence of the certificate is at variance with the allegations of the complaint. (*Day* v. *Town of New Lots,* 107 N. Y. 148; *Southwick* v. *First Nat. Bank of Memphis,* 84 N. Y. 420; *Romeyn* v. *Sickels,* 108 N. Y. 650; *Reed* v. *McConnell,* 133 N. Y. 425; *McIntyre* v. *Tucker,* 36 App. Div. 53; *La Chicotte* v. *R. R. & El. Co.,* 15 App. Div. 380; *Oakley* v. *Morton,* 11 N. Y. 25; *Smith* v. *Brown,* 17 Barb. 431; *Todd* v. *Union Casualty & Surety Co.,* 70 App. Div. 52; *Rothschild* v. *Title G. & T. Co.,* 204 N. Y. 458; *Terry* v. *Munger,* 121 N. Y. 161; *Conrow* v. *Little,* 115 N. Y. 387; *Kirk* v. *Crystal,* 118 App. Div. 32; *Droege* v. *Ahrens & Ott Co. Mfg. Co.,* 163 N. Y. 466; *Matter of Berry & Co.,* 174 Fed. Rep. 409.) The referee failed to pass upon the question as to whether the chief engineer unreasonably delayed in rendering his determination prior to the commencement of the action. The defendants were entitled to have this vital question adequately determined by the referee. (*Alcock* v. *Davit,* 179 N. Y. 9; *Miller* v. *N. Y. & N. S. Ry. Co.,* 183 N. Y. 123; *Kelley* v. *Buffalo Savings Bank,* 180 N. Y. 171; *Dougherty* v. *Lion Fire Ins. Co.,* 183 N. Y. 302; *Rodgers* v. *Clement,* 162 N. Y. 422.) The findings are insufficient to support the judgment awarding to the plaintiff $42,069.35 for excavation outside of the net sections of the railroad. (*O'Brien* v. *Mayor,* 139 N. Y. 543; *Peterson* v. *City of New York,* 205 N. Y. 323; *Harmony* v. *Bingham,* 12 N. Y. 99; *Tompkins* v. *Dudley,* 25 N. Y. 272; *Wheeler* v. *Conn. Mut. L. Ins. Co.,* 82 N. Y. 543; *Dermott* v. *Jones,* 69 U. S. 1; *Logan* v. *Cons. Gas Co.,*

107 App. Div. 384; *Cameron-Hawn Realty Co.* v. *City of Albany,* 207 N. Y. 377; *Dolcher* v. *Fry,* 37 Barb. 152; *Wahl* v. *Barnum,* 116 N. Y. 87; *Zoebisch* v. *Von Minden,* 120 N. Y. 406.) It was reversible error to receive the opinion evidence of plaintiff's witness Hipkins as to the quantities of earth and rock removed on account of slides. (*Dougherty* v. *Milliken,* 163 N. Y. 527; *Van Wycklen* v. *City of Brooklyn,* 118 N. Y. 424; *People* v. *McElvaine,* 121 N. Y. 250; *Link* v. *Sheldon,* 136 N. Y. 1; *Weibert* v. *Hanan,* 202 N. Y. 328; *Reynolds* v. *Robinson,* 64 N. Y. 589; *People* v. *Augsbury,* 97 N. Y. 501; *Guiderman* v. *Liverpool, etc., S. S. Co.,* 83 N. Y. 358.) The referee erred in allowing interest upon the plaintiff's claims from a date prior to the rendition of his report. (*Excelsior T. C. Co.* v. *Harde,* 181 N. Y. 11; *Delafield* v. *Village of Westfield,* 41 App. Div. 24; 169 N. Y. 582; *Weber & Co.* v. *Hearn,* 49 App. Div. 213; *People ex rel. Cranford Co.* v. *Willcox,* 153 App. Div. 759; 207 N. Y. 743; *White* v. *Miller,* 78 N. Y. 393; *McMaster* v. *State,* 108 N. Y. 542.)

*Thomas F. Conway* for respondent. The plaintiff's account books in which were kept an account of the cost of the work and material done and supplied by the plaintiff in the performance of extra and additional work, the daily slips containing an account of each day's entries sent to defendants, as well as the monthly statements containing summaries of such entries, were competent and properly received in evidence. (*Woodworth* v. *Brooklyn El. R. R. Co.,* 22 App. Div. 501; *Fowler* v. *Hibbard,* 40 App. Div. 108; *Dewey* v. *Hotchkiss,* 30 N. Y. 497; *Brandt* v. *Public Bank,* 139 App. Div. 173; *Pendleton* v. *Weed,* 17 N. Y. 72; *Whitman* v. *Horton,* 14 J. & S. 531; *Rathbone* v. *Hatch,* 80 App. Div. 115; *Bloomington Mining Co.* v. *Brooklyn Ice Co.,* 58 App. Div. 66; 171 N. Y. 673; *Kerr* v. *McGuire,* 28 N. Y. 446; *Little* v. *McClain,* 134 App. Div. 197.) Plaintiff was legally entitled to recover

under the true construction of the contract as well as the practical construction placed upon it before and at the time the work was done. (*Mechanics' Bank* v. *City of New York*, 164 App. Div. 128; *Thilemann* v. *City of New York*, 82 App. Div. 136; *Ryan* v. *City of New York*, 159 App. Div. 105; *Carthage T. P. Mills* v. *Vil. of Carthage*, 200 N. Y. 1.) The quantities of excavation due to slides as found by the referee were clearly proven by competent evidence, largely from the same sheets kept by the engineers of the commission upon which defendant McDonald told plaintiff they would be recorded and kept and in accordance with which plaintiff would be paid, and the plaintiff was legally entitled to recover the amount allowed by the referee therefor. The assertions in defendants' brief that either the findings, or inconsistent findings made at their request, or their exceptions to conclusions of law based thereon by the referee present reviewable error, are not supported by the record. (*Thomas* v. *Stewart*, 132 N. Y. 580; *Solomon* v. *Vallette*, 152 N. Y. 147; *Dwyer* v. *Mayor, etc.*, 77 App. Div. 224; *Andrews* v. *Brewster*, 124 N. Y. 433; *General Electric Co.* v. *Nassau Electric Co.*, 36 App. Div. 510; *Kine* v. *Farrell*, 71 App. Div. 219; *Goodrich* v. *Sanderson*, 35 App. Div. 546; *Jackson* v. *Volkening*, 81 App. Div. 36, 45; *Hill* v. *Sommer*, 53 Hun, 392; *Woodruff* v. *Woodruff*, 52 N. Y. 53.) The admissions or so-called recommendations of defendant McDonald were competent and their reception by the referee proper. (*Matter of Morgan*, 104 N. Y. 75; *Bartlett* v. *Tarbox*, 1 Abb. Ct. App. Dec. 120; *McRorie* v. *Monroe*, 203 N. Y. 426; *Reed* v. *McCord*, 160 N. Y. 330; *Koester* v. *Rochester Candy Works*, 194 N. Y. 92; *Union Bank* v. *Deshel*, 139 App. Div. 217; *White* v. *Old Dominion S. S. Co.*, 102 N. Y. 660; *Tennant* v. *Dudley*, 144 N. Y. 504; *Smith* v. *Satterly*, 130 N. Y. 677.) The asphalt judgment was not a proper credit to defendants. (*Aberdeen* v. *Blackmar*, 6 Hill, 324; *Bridgeport Ins. Co.* v. *Wilson*, 34 N. Y. 281;

## 358                BRADLEY v. McDONALD.

*Binsse* v. *Wood*, 37 N. Y. 530.) The failure of plaintiff
to procure the final certificate of the chief engineer of the
Rapid Transit Subway Construction Company, constitutes
no bar or defense to the action, neither is the certificate
set forth in the answers entitled to any consideration.
Indeed, the findings of fact of the referee, supported as
they are by evidence to which no objection is urged, and
justifying his legal conclusions, leave no question open for
review as to this point. (*Burke* v. *Mayor, etc.*, 7 App.
Div. 128; *Thileman* v. *Mayor, etc.*, 66 App. Div. 455;
*Thomas* v. *Stewart*, 132 N. Y. 580; *Gearty* v. *Mayor;
etc.*, 171 N. Y. 61; *MacKnight Flintic Stone Co.* v.
*Mayor, etc.*, 160 N. Y. 72; *People ex rel. R. T. S. C. Co.*
v. *Craven*, 210 N. Y. 443.) The allowance of interest by
the referee was proper. (*Sweeney* v. *City of New York*,
173 N. Y. 414; *Roeblings Sons Co.* v. *City of New York*,
110 App. Div. 366; *People ex rel. Cranford Co.* v. *Wil-
cox*, 207 N. Y. 743; *Simon* v. *Etgen*, 213 N. Y. 589; *Van
Rensselaer* v. *Jewett*, 2 N. Y. 135; *McMahon* v. *N. Y. &
E. R. R. Co.*, 20 N. Y. 463; *Degnon-McLean Co.*
v. *City Trust Co.*, 99 App. Div. 195; 184 N. Y.
544; *Cutter* v. *Gudebrod Bros. Co.*, 190 N. Y. 252; *Sloan*
v. *Baird*, 162 N. Y. 327.) So far as the parties have
construed the contract by the pleadings framed by them
they are bound by such construction. (*Solomon* v.
*Vallette*, 152 N. Y. 147; *City of New York* v. *N. Y. C.
R. R. Co.*, 193 N. Y. 543; *Insurance Co.* v. *Dutcher*, 95
U. S. 269; *Manchester Paper Co.* v. *Moore*, 104 N. Y.
680; *Streppone* v. *Lennon*, 143 N. Y. 626; *La Chicotte* v.
*Richmond R. & L. Co.*, 15 App. Div. 380; *Tilden* v.
*Tilden*, 8 App. Div. 99; *Carthage T. P. Mills* v. *Vil. of
Carthage*, 200 N. Y. 1; *Post* v. *B. H. R. R. Co.*, 195
N. Y. 62; *St. John's College* v. *Ætna Ind. Co.*, 135 App.
Div. 480.)

HOGAN, J. This action was commenced in August,
1906, against John B. McDonald and Rapid Transit Sub-

way Construction Company, hereinafter designated as "Construction Company," to recover a balance alleged to be due plaintiff for work performed and materials furnished for the construction of subsection six of the New York subway, also for extra work performed and materials supplied and for additional work performed and materials supplied in connection with said work.

March 17th, 1911, during the progress of the trial and before the defendant's case was opened, John B. McDonald died. April 8th, 1911, Georgie Annie McDonald, executrix of the last will and testament of John B. McDonald, was substituted as a party defendant without prejudice to the proceedings theretofore had in the action.

On or about February 21st, 1909, the city of New York by the board of rapid transit railroad commissioners, herein referred to as the board of commissioners, entered into a contract with John B. McDonald, wherein Mr. McDonald undertook to fully construct and equip the rapid transit railroad commonly known as the "Subway" from the city hall in the borough of Manhattan to the terminals in the borough of The Bronx, and to operate the same as therein provided. Simultaneously with the execution of the contract Mr. McDonald was required to give security for the performance of the contract on his part, both under the agreement for construction and equipment and also as a continuing security.

The Rapid Transit Subway Construction Company was organized February 16th, 1900, to construct or aid in the construction of rapid transit railroads in the city of New York. About the date of the execution of the contract between the city and Mr. McDonald a written contract was made between Mr. McDonald and the Construction Company, wherein the Construction Company agreed to advance to Mr. McDonald the amount of cash security required to be deposited by him with the city comptroller, and to execute as surety or to procure satisfactory sureties to execute

the bonds required to be furnished by Mr. McDonald. As security for the re-payment of the sum of money to be advanced, and for the protection of the Construction Company from any liability upon the bonds, the contract provided (1) that the Construction Company should receive all moneys payable to the contractor (Mr. McDonald) under his contract, and should disburse the same; (2) that McDonald should not make sub-contracts for any portion of the work or for the purchase of any material required in carrying out the work until after the same had been first approved by the Construction Company; (3) for the purpose of more effectually carrying out the provisions of the contract, Mr. McDonald assigned to the Construction Company all payments which should become due to him from time to time under the contract made by him with the city, the amounts to be paid to the Construction Company as the same fell due; (4) the Construction Company agreed to pay out of the said moneys so received, so far as the same would be sufficient for that purpose, all amounts due and payable to sub-contractors and others by the contractor (Mr. McDonald) for work done or materials furnished in carrying out the work required by the contract with the city of New York when and as the same became due.

July 31st, 1900, Mr. McDonald entered into a contract with the plaintiff, by the terms of which plaintiff for a valuable consideration undertook and agreed to construct the rapid transit railroad between the center of Sixtieth street and the center of One Hundred and Fourth street, known as subdivisions A and B of subsection six. Plaintiff, on the same day, entered upon the performance of the contract having first given the necessary bond required of him.

The contract amongst other things referred to the assignment of the original contract to the Construction Company and to the provisions thereof, whereby the latter company had agreed to pay out of moneys received

by it all amounts which might become due and payable from the contractor to sub-contractors and a waiver on the part of the sub-contractor (plaintiff herein) of the right at any time to file a lien against any moneys which might at any time be or become due from the city under the principal contract, and to have recourse to such moneys in the hands of the Construction Company for payment of sums to become due and payable under his contract, a copy of which was to be deposited with the Construction Company.

The fact was conceded in the pleadings and found by the referee that long prior to the commencement of the action the Construction Company had received from the city, under its agreement with Mr. McDonald, a large sum of money payable to Mr. McDonald under his contract and retained of the moneys so received more than sufficient to meet and discharge any claim established against it or its co-defendant, Mr. McDonald, on account of work performed and materials furnished by plaintiff.

The provision of the contract to which attention has been called read in connection with the agreement between Mr. McDonald and the Construction Company entitled the plaintiff to the benefit of the provision of the latter agreement as fully as though he had been specifically named therein, and he is entitled to recover from the Construction Company any amount due to him. (*Lawrence* v. *Fox*, 20 N. Y. 268; *Coster* v. *Mayor, etc., of Albany*, 43 N. Y. 399; *Pond* v. *New Rochelle W. Co.*, 183 N. Y. 330; *Rochester Telephone Co.* v. *Ross*, 195 N. Y. 429.)

The contract between Mr. McDonald and the city provided for the construction and equipment of the railroad for a lump sum. The work was to be performed pursuant to specifications and contract drawings furnished by the board of commissioners which were intended to be full and complete, but in view of the magnitude of the work and the impossibility either to show in advance all details

or to forecast all exigencies the specifications and drawings were to be taken as indicating the amount of work, its nature and method of construction so far as the same was distinctly apprehended. The contractor, however, became obligated to construct and equip the railroad as contemplated in the contract and specifications. The board of commissioners reserved the right to amplify the plans, to add explanatory specifications, to furnish additional specifications and drawings within the limits of the general purview of the work, to require additional work to be done or additional materials to be furnished, or both within the general scope of a rapid transit railroad, or to require work or materials specified or provided for to be omitted. If such additional work or materials were required, then the reasonable value thereof was to be additionally paid to the contractor; if work or materials were omitted a reasonable deduction should be made therefor.

The contract between Mr. McDonald and the plaintiff was a unit price contract, *i. e.,* plaintiff was to be paid certain specified sums for certain units, thirteen in number, and in addition for " construction and reconstruction of sewers along and off the route of the railway, stone, pipe or tile drains, all water, gas and other pipes, electric cable conduits, vaults, subways and other surface and sub-surface structures as shown on plans, including excavation, back filling and restoring street surface, except trenches for sewers along the route of the railway and adjoining the said railway, which will be paid for at the prices herein provided for excavation and restoring street surface, one hundred sixty thousand dollars.

" The cost of maintaining all railways, sewers, gas, water and other pipes, conduits, vaults, subways and other surface and sub-surface structures, and all sheathing, timbering, pumping and nailing is included in above prices. * * * In case the sub-contractor shall be required to maintain the elevated railroad at the inter-

section of Broadway and Ninth Avenue, or to reconstruct
or build foundations for the same, payment shall be made
for the actual cost of labor and material furnished by him,
and ten per cent of the cost of labor in addition thereto
for the said work."

That difficulties were likely to be encountered in the
progress of the work was recognized in the contract
between Mr. McDonald and the city, as well as in the
contract between plaintiff and Mr. McDonald. The latter
contract contained the provisions above referred to relat-
ing to amplification of plans, additional plans and
specifications, additional work and payment therefor.

A further provision was "Payment for Additional
Work." "The sub-contractor shall become entitled to
payment for additional material furnished or work done
only upon the determination of the Chief Engineer of the
Board of Rapid Transit Railroad Commissioners, as shown
by special plans and specifications to be issued and coun-
tersigned by him, which special plans and specifications
when so issued shall be binding upon both parties hereto
upon the certificate of the Chief Engineer of the Con-
struction Company showing the amount of such additional
work or material done or furnished by the sub-contractor."

Payment was to be made to plaintiff as the work
progressed upon written vouchers certified to by the chief
engineer of the Construction Company, whose duty it was
on or about the first day of each month to prepare an
estimate of the work done and materials supplied to the
end of the preceding month, ninety per cent of the amount
appearing due by said estimate to be paid on or about
the 15th day of each month and the remaining ten per
cent was to be paid ninety days after the completion of
the work and its acceptance by the chief engineer of the
board of commissioners. Such monthly estimates were
to be merely tentative and upon the completion of the
work the chief engineer was to prepare an official state-
ment showing the entire work done, amount of material

furnished, amount payable to the sub contractor, etc., which certificate was to be final and conclusive upon the parties to the contract, and any balance due to plaintiff to be paid as above stated.

The referee, before whom the case was tried, found that the rapid transit railroad, including subsection six, was completed, put in operation and accepted by the city of New York and the board of rapid transit commissioners and its chief engineer on or prior to October 23d, 1904; that plaintiff had completed the construction of said subsection six in a good and workmanlike manner as required by the terms of his contract of July 31st, 1900; that between July 31st, 1900, and October 24th, 1904, the plaintiff performed regular work and furnished material under the original contract of the value of $3,077,479.62, upon which the defendant Construction Company had paid plaintiff the sum of $3,002,340.59 and no more, from moneys earned by Mr. McDonald under the principal contract and which were received by the Subway Construction Company, leaving a balance of $75,139.03, and that after deducting all payments made for extra work before the commencement of this action there was due to plaintiff on account of specified extra work, $8,593.61, making a total of $83,732.64. The performance of regular and extra work and furnishing of materials by plaintiff under the original contract, the value of the same, and payments made on account thereof in the amounts above stated as found by the referee was alleged in the complaint and admitted in the answers of defendants.

The referee also found that plaintiff was entitled to recover of defendants for additional work performed and materials furnished, the principal items of which are embraced in what is designated as "Force Account Basis." Other items allowed for arose as found by the referee under special agreements made between the parties. Some additional items were conceded upon the trial, and other findings relate to work and material of

which account was kept other than upon the "white slip" method adopted in the "Force Account Basis." Including the sum of $83,732.64 allowed by the referee above stated the total credit allowed plaintiff was $658,834.97. As against that amount the referee allowed defendants credit for $232,751.36, and determined that plaintiff with allowance of interest, after making deduction of $100,000 paid July 3d, 1906, as of that date was entitled to recover of defendants $480,541.27. Upon the report of the referee judgment was entered in favor of plaintiff for $502,966.08.

It is asserted by counsel for appellants that reversible error was committed by the referee upon the trial of the action and in the findings made by him and his conclusions based thereon. Briefly summarized, his argument is that under the contract between plaintiff and Mr. McDonald plaintiff was required to perform the principal part of the work for which allowances were made by the referee for the lump sum of one hundred sixty thousand dollars; that evidence offered by plaintiff tending to show the amount of work performed, quantity of materials furnished and value of the same was erroneously admitted; that the referee erred in refusing to allow an offset against plaintiff in favor of defendants; that error was committed in the allowance of interest and in the admission of certain evidence. Counsel for appellants further contends that error arises by reason of inconsistency between certain findings of fact made by the referee and findings proposed by the defendants, marked "Found" by the referee.

The complaint consists of fifty causes of action. The first and second causes of action seek recovery for the balance claimed to be due for regular work and certain extra work under the original contract, which amount, as I have stated, was admitted by defendants. Two several causes of action are summaries of preceding causes of action. Seventeen causes of action are based

on the theory of account stated. The remaining causes of action relate to extra and additional work performed and material furnished.

The separate counts of the complaint relating to the "Force Account Basis" contain the following allegation:

"That at the special instance and upon the direction, requirement and authority of the defendants and the Board of Rapid Transit Commissioners and their engineers and by their authority, and upon plans furnished and provided by said engineers and said defendants or under their direction, all as provided and authorized in said contract, the plaintiff performed extra work, labor and services for the defendants in and about or in connection with and in addition to, the performance of the contract entered into by him and said defendant John B. McDonald, Exhibit A, which is hereto annexed, in   *   *   * [here followed a description of the work performed], and in doing so performed a large amount of labor and supplied a large amount of material [the nature of which is stated and the value of the same], which labor and material were rendered and performed more than ninety days prior to January 1st, 1905, and plaintiff became entitled to payment therefor prior to said date, with interest; but defendants have neglected and refused to pay plaintiff therefor."

The separate answers of defendants are alike in substance and each numbered count of the complaint is answered by reference to the number of the cause of action. The answer of each defendant to each of the several counts of the complaint, above quoted, after certain denials contained therein is as follows: " Except that he *admits* that upon the direction and requirement of the defendants and the Board of Rapid Transit Railroad Commissioners and their engineers, and by their authority and upon plans furnished and provided by said engineers and defendants, as provided and authorized in said contract, the plaintiff performed work and furnished

materials additional to the work and materials set forth in the plans of the Rapid Transit Railroad referred to in the said contract * * * [stating the character of the work]."

At the outset appellants are confronted with the admissions in their answers contained and the effect of a unanimous affirmance by the Appellate Division of the judgment entered upon the report of the referee, which decision requires us to treat the findings of fact as sustained by evidence.

The referee found that in addition to the work specified in the contract between the defendant McDonald and plaintiff and for which prices were fixed in said contract, plaintiff was required to and did a large amount of extra and additional work and furnished a large amount of material and labor in doing the same, at the request of the defendant McDonald and under his direction and at the instance and upon the request of the defendant Rapid Transit Construction Company and under its direction as more fully thereinafter found by him. Additional findings are to the effect that after the plaintiff began the construction of subsection six, work extra and additional to the work specified and called for by the contract between said McDonald and the plaintiff was required, a large part of the same being work that did not appear in or upon the plans and specifications upon which the plaintiff's contract was made, other portions of the same being work which, although appearing upon the plans, was required to be done in a different manner and of a different kind, because of changes made in the plans by and under the direction of the defendant McDonald and by and under the direction of the Construction Company. That when said work was first required and as it developed from time to time, the question as to whether it was extra or additional work or work properly called for by the contract between plaintiff and defendant McDonald was taken up and discussed between plaintiff

and the defendant and the question determined, but early in the fall of 1901 it became apparent to the plaintiff and defendants that a large amount of such work would be encountered and would have to be done as the work of constructing said subsection six progressed.

Referring to the findings relating to the "Force Account Basis," it is important that the substance of the same though voluminous should be set forth.

In effect they are as follows: In the latter part of September or the fore part of October, 1901, an agreement was entered into between Mr. McDonald and the plaintiff that all extra or additional work should thereafter be done by plaintiff upon what is called a "Force Account Basis," that is, the actual cost of the labor plus fifteen per cent for superintendence or profit and actual cost of materials necessary to be used plus ten per cent for superintendence or profit. The resident engineer of the Construction Company, one Moore, who was required to and did take instructions from Mr. McDonald, devised a method of keeping track of the cost of all extra work and the amount for which plaintiff would be entitled to be paid, and required plaintiff to adopt and follow it, namely: Mr. Moore made up a form and directed plaintiff to have it printed upon white slips of paper. The form was headed " William Bradley, Sub-Contractor, Sections 6A and 6B, Daily Report of Extra Work. Location ——— Name of work ——— Date ———. All time given in eight hour days." Then followed on the form columns for each class of laborers, mechanics, etc., employed, and space for the time of each, for foremen, teams, etc., and for materials used. The plaintiff was directed by Mr. Moore to furnish the slips to his foremen who had charge of the doing of any extra or additional work with instructions to place upon the same the number of men employed and the time for which they were employed, of various classes as well as the quantity and kind of materials used by him and his gang each day,

the number and time of teams used, loads of dirt carried away, etc., indicated upon the slip. Plaintiff was further required to have each foreman doing extra work and using such slips sign the same each evening, and to have the superintendent ascertain the correctness of the slip after it was so signed, and if found to be correct to place the letters O K upon it over his name, if incorrect to have the same corrected before signing his name and O K thereon, then to have said slips delivered at the plaintiff's office where his books were kept, to have such slips correctly entered upon said books so as to show the kind and quantity of materials used, and the number, class and time of men employed, loads of dirt carried away, etc., then in addition to have sent to said Moore daily for the defendants a copy of the entry or entries upon the plaintiff's books thus made, and at the end of each month to have a summary or total of such daily entries upon plaintiff's books made upon said books, and a copy of said summary or total sent to the defendant Construction Company.

The plaintiff daily furnished to the foremen in charge of extra or additional work said white slips and required them to place thereon the time, work and material directed by Mr. Moore. The foremen complied with the directions given them. Each evening the white slips so made out by the foremen were examined by the superintendent and when found correct, or after any error therein found had been corrected, were O K'd and approved by the superintendent. The plaintiff correctly entered upon his books the contents of the white slips, as thus verified, and O K'd daily, except that occasionally where a slip would be held for verification there would be a little delay in entry of the same. A correct copy of such entries and the details of the same was daily sent to Mr. Moore, except when a delay occurred as to some slips as found, and correct copies of the entries from such slips were sent as soon as verified and made. At the end of each month plaintiff made a correct summary

upon his books of the daily entries made showing the cost of labor and material and the work done for the month and sent a correct copy of the same to the defendants. The form of said monthly statements is as follows: "Date —— Rapid Transit Subway Construction Company to. William Bradley, General Contractor, Dr.," and then followed the location of the work, the number of hours of labor of each class of employees, their grades, daily wages, total wages for the month, to which was added fifteen per .cent, and a list of and quantity of materials used and the cost of the same, to which was added ten per cent.

Mr. Moore was charged by the defendants with the duty of keeping track of such extra or additional work, of verifying the correctness of the daily and monthly summaries rendered by plaintiff and plaintiff's claims for extra or additional work and he did compare the monthly reports with the daily reports and verified the same and then compared them with reports made to him by men employed by the Construction Company to check up the cost of the work and thus in connection with his personal knowledge of work done, etc., verified the reports and when found to be correct placed his signature under the letters O K upon the monthly summaries rendered by plaintiff to indicate their correctness. About August 1, 1903, he ceased by direction of defendants placing his signature upon the monthly summaries, although by direction of defendants he continued to verify the same as he theretofore had done. This method was adopted and carried out in regard to all claims made by plaintiff for work done as extra work and material furnished except in certain cases where agreement was made between the parties that plaintiff should be paid for same on a different basis than "Force Account Basis." The plaintiff complied with the directions of Moore in keeping his accounts and relied upon the method devised by him and acted on as satisfactory to defendants. He employed with the knowledge and approval of Moore and defendants, timekeepers who

made accurate daily reports which were daily compared with the reports of the foremen, verified by the superintendents, of the same facts. Such reports were kept on file in the office maintained by plaintiff, and were open to inspection and examination by defendants, their checkers, Mr. Moore and his assistants, and were inspected and examined by them and in the event of any discrepancy the same was settled at the time to the satisfaction of defendants' checkers, Mr. Moore and his assistants, and correctly entered in plaintiff's books and correct monthly summaries thereof made and sent by plaintiff to defendants, received and examined by them and if, as occasionally happened, any error was found or claimed by them, it was called to the attention of plaintiff and thereupon adjusted and settled at the time and new and corrected summaries sent by plaintiff to defendants and thereafter no further objections were made by defendants.

In connection with the finding above referred to, the referee in finding number twenty-six stated that the method of keeping account of the cost and value of extra and additional work described in finding number twenty-five, as devised by Mr. Moore, was continued as the work progressed until it was completed with the knowledge and consent of the defendants, and upon their agreement and the agreement of each that the work should be done on the basis found and account and track of it kept in the manner stated, and by the twenty-seventh finding the referee found that plaintiff's books, upon which were entered both the reports made by the foremen and O K'd by the superintendent, and the monthly summaries were kept in the office maintained by him at Eighty-sixth street and Broadway during the existence and continuance of the work.

With reference to the books and accounts, the twenty-eighth finding of fact made by the referee is important in a consideration of the questions presented in this case, and, therefore, is quoted in full:

"*Twenty-eighth.* That these books were open to inspec-

tion by both of the defendants and their agents; that the original white slips made up by the foreman and O K'd by the superintendent were kept in the same office during the same time, and were open to inspection and examination by the defendants and their agents. That men employed by the defendants as checkers of the time, the number of men employed, the time spent by them, the quantity and character of material used, teams used, etc., were kept by the defendants on the job and required to and did examine from time to time and compare the said white slips as well as the entries upon the plaintiff's books with their check in order to ascertain the correctness of the plaintiff's claims and bills for extra work. That said Ernest C. Moore also inspected the plaintiff's books and the white slips kept in the office from which entries in the books were made from time to time and compared them with the reports made to him by men employed in his office and paid by the defendants, whose duty it was to keep a check upon the cost of all extra work, knowing and reporting to him the number of men employed, the time spent, and the quantity of material used. That said Moore was upon the work daily, and also had an engineer whose duty it was to be familiar with the work and who was familiar with the work for which plaintiff was claiming extra pay, knowledge of its extent and character and of its reasonable and fair cost, as well as knowledge by personal observation of the force of men and teams employed from time to time by the plaintiff in doing the work, and the character and quantity of material required and used in it, and the fair and reasonable value of such material. That at the times he placed his name and O K upon or approved the monthly statements of bills sent by the plaintiff to the defendant Subway Construction Company, and by it returned or sent to said Moore for verification, he had knowledge of and was familiar with the work specified in the same. That whenever the checkers employed by

the defendants or said Moore, or said Moore himself, discovered any discrepancy or difference between the entries upon plaintiff's books and the accounts appearing upon his bills or white slips, and the knowledge which they possessed or acquired and the reports made and kept by themselves, these checkers or said Moore, as the case might be, would and did go to the office of the plaintiff to call his attention to such discrepancy or difference, and the same was then and there looked up, and it was ascertained which was correct. In some cases it was found the check or reports claimed by the defendants was incorrect, and in such case no change was made upon the entries in plaintiff's books, or upon the bills made therefrom and sent by the plaintiff to the defendants. In other cases, and they were the larger in number and amount, it was found, or, at least, said defendants or their agents or said Moore claimed, that there were errors in the entries in plaintiff's books, and that they must be changed and corrected to make them agree with what defendants' checkers reported, and what said Moore personally knew. And such changes were made by the plaintiff upon his books and new and corrected bills sent them with such changes upon them in order to comcomply with such corrections. Under instructions from the plaintiff, his book-keeper even made such changes in many cases where defendants' checkers could not show the plaintiff's entries were erroneous, but in order to make plaintiff's bills and books agree with the defendants' reports and claims as to the amount of work done and the cost thereof at the time and as the work progressed. After such corrections it appears that in no instance was a bill or claim O K'd by said Moore as hereinbefore found or returned by him as correct, found to be incorrect by any investigation thereof thereafter made by the defendants."

By findings numbers fifty-two, fifty-three, fifty-four, fifty-five, fifty-six and fifty-seven the referee found in substance that when bills for extra work for which the

action was brought were presented by plaintiff from month to month, the work for which they were presented was open for observation and inspection, and its extent and character readily ascertainable, as well as the number of men and teams employed, and the character and quantity of materials used; that where work was done for plaintiff by third parties, the work thus done was personally examined and inspected by Mr. Moore and verified as to its character, cost and workmanship, and where materials were furnished an itemized bill of the same to the plaintiff was sent to the defendant and included in his monthly summary, and all were for the fair and reasonable and actual cost of labor and material; that no objection was raised by the defendants or either of them as to the correctness of any claim until long after the work was completed and accepted, and then only in a few instances as regards certain bills to which other findings are made applicable; that no objection was made as to the bills or that the plaintiff did not employ as many men as he charged for or for the time specified, or that he did not furnish or use the materials specified in the bills, or do the work mentioned therein and at the cost and price therein stated and claimed for.

In the numerous findings made by the referee relating to items of the "Force Account Basis" practically the same language is used, in substance, as follows:

"That the plaintiff at the special instance and upon the request and direction and requirement of the defendants and Board of Rapid Transit Railroad Commissioners, and their engineers and by their authority and upon plans furnished and provided by said engineers and defendants, or under their direction, performed work and furnished materials extra and additional to the work and material set forth in the plans of the Rapid Transit Railroad referred to in the contract and in addition to the performance of said contract between plaintiff and defendant McDonald * * *."

Such statement was followed by a recital of the character of the work performed and material furnished, the cost of labor and the cost of the material separately stated and the fair and reasonable value of each, the actual cost to the plaintiff of the same including fifteen per cent upon the cost of labor and ten per cent on the cost of material used and required and the amount carried out in dollars and cents; that the labor employed was paid for at the prevailing rate of wages and was charged for by the plaintiff at not more than the said rate plus the fifteen per cent added for superintendence and bills for the same sent in monthly by the plaintiff to the defendant Construction Company at its request and at the request of the defendant McDonald; that the material supplied was purchased and charged for at its market value at the time plus ten per cent and bills for the same sent in monthly to the defendant Construction Company at its request and the request of the defendant McDonald; that account and track of the labor employed and materials furnished were correctly kept by the plaintiff, daily reports and monthly summaries of bills thereof sent to the defendants, the bills examined and verified by Ernest C. Moore, engineer of the defendants and others " in the same manner as found in findings twenty-five, twenty-six, twenty-seven and twenty-eight, and the facts therein found are made a part of " each finding relating to the " Force Account Basis." The referee also found that all of the work thus performed was done and completed on or before October 24th, 1904, and the material mentioned was furnished on or prior to said date. The conclusions of law separately found in favor of plaintiff upon each finding of fact.

Counsel for appellants contends that error of law was committed by the referee in construing the provisions of plaintiff's contract and in applying the same to the facts found in regard to work done on surface or sub-surface structures; that plaintiff undertook to perform the work

of maintaining, reconstructing and readjusting the surface and sub-surface structures necessitated by the construction of the subway railway as originally planned for the lump sum of one hundred sixty thousand dollars, irrespective of what was shown on "Supplementary D Drawings," and he directs our attention to causes of action numbers four, five, six, seven, nine and fourteen.

The first item considered by counsel for appellants arose under cause of action number six of the complaint, and is treated by him as being "typical of all the others" and as illustrating the points he submits relating to the several causes of action, though they are separately considered by him. While consideration has been given to the several causes of action cited, a review of the typical case selected by counsel will be beneficial. Before taking up the selected case it is essential that a clear understanding be had of the designated "Supplementary D Drawings."

The contract of February 21st, 1900, between the city and Mr. McDonald referred to plans mentioned in the specifications one hundred seventeen in number, bearing date April 7th, 1898, each countersigned by the engineer of the board of commissioners. Such plans, together with the specifications accompanying the same, were plans for the contemplated construction of the subway, and were known as "Contract Drawings."

The "Supplementary D Drawings" were not embraced in that class of plans, but consisted of one hundred forty-two maps or plans bearing the same date as the contract plans, to wit, April 7th, 1898. Of that number of drawings Nos. D48 to D69 inclusive covered sub-section six embraced in the contract between Mr. McDonald and the plaintiff. The contract in substance provided that the "Supplementary D Drawings," D48 to D69 inclusive, exhibited certain information which the board of rapid transit commissioners had received from its engineer of the nature of the soil underlying portions of the route, the nature and position of elevated and surface railways,

water mains, gas and other pipes, sewers, electric subways, manholes, hydrants, catch basins and other surface and sub-surface structures; that the drawings had been exhibited to plaintiff without any guaranty on the part of the contractor (McDonald) as to their completeness and correctness; that plaintiff was permitted, at his option, to have copies thereof for such aid, if any, as he might derive from the same. The contract also provided that if upon opening the streets or otherwise, difficulties of any nature be encountered which are not indicated or suggested by the "Supplementary D Drawings" or any additional surface or sub-surface structures be discovered or found of different size or in different positions or of different nature from those shown on the "Supplementary D Drawings" or if any of such drawings are found erroneous, the plaintiff shall have no claim whatever against the contractor for damages or compensation for any such failure, discrepancy or error, but is to take every necessary and proper precaution to overcome the unforeseen difficulty, and is to take care of, protect, remove, adjust or readjust, as the case may be, the additional or different surface or sub-surface structures according to the direction of the chief engineer of the Rapid Transit Subway Construction Company.

The "Supplementary D Drawings" were not a part of the contract plans for the construction of the subway railroad. They were merely advisory and purported to contain only such information as the board of commissioners possessed relating to sub-surface structures. The report of the referee does not make reference to them, save as found that contracts were made between Mr. McDonald and the city and Mr. McDonald and plaintiff, which contracts embraced the clauses relating to the drawings. A large number of requests to find matters of fact, made by defendants, involved the drawings mentioned, many of which were marked "Found" by the referee. Examination of the same in connection with the

findings made in the report of the referee fails to disclose any inconsistency between the findings as made and the findings marked "Found."

The case selected by counsel arises under cause of action number six of the complaint, wherein plaintiff sought to recover for additional work claimed to have been performed and materials furnished in the reconstruction of the vaults of the street surface railway interfered with by reason of the subway construction.

At the request of defendants the referee found that the "Supplementary D Drawings," D48 to D69 inclusive, were referred to in the contract between plaintiff and Mr. McDonald; that they had been exhibited to the plaintiff without guaranty as to their completeness; that the drawings did not show anything in regard to the manner in which or the method by which the surface and subsurface structures, including the vaults, which were interfered with by the construction of the subway, were to be relaid, reconstructed or readjusted, so as to overcome or avoid such interference; that the "Supplementary D Drawings" exhibited a horse car surface line on the surface of Broadway from Sixtieth street to at or about Sixty-fifth street, and from Seventy-second street to One Hundred and Fourth street, and an electrified surface railway, with underground ducts and vaults, etc., from Sixty-fifth street to Seventy-second street; that *subsequent* to the date of said drawings the horse car lines shown thereon were electrified, and at the date of the contract between plaintiff and Mr. McDonald the surface railway on Broadway from Sixtieth to One Hundred and Fourth street was an electric underground railway, operated by electric power obtained from a slot rail in an underground conduit, and in connection with said electrified railway there was an underground conduit and electric vaults, etc.; that upon the "Supplementary D Drawings" *some* of the sub-surface vaults were shown in connection with the electric surface street railway between Sixty-

fifth and Seventy-second streets; that the monthly state-
ments for the restoration and reconstruction of the vaults
covered all the work done by the plaintiff from Sixtieth
street to One Hundred and Fourth street, including the
work done on the reconstruction and restoration of the
vaults between Sixty-fifth street and Seventy-second
street shown on drawings referred to; that beginning
with the month of December, 1902, and from time to
time thereafter, the plaintiff furnished materials and per-
formed the work necessary to restore and to reconstruct
the sub-surface vaults which had been destroyed or
injured during the construction of the tunnel to a condi-
tion safe and suitable for their usual service and to the
reasonable satisfaction of their owners; that the plaintiff
directed his superintendents, foremen and bookkeepers to
keep track of the labor and materials used in said work
on the white slips and in accordance with the "white slip
system," and thereafter and beginning with the month of
December, 1902, from time to time and including the
month of November, 1904, the plaintiff rendered to and
filed with the chief engineer of the Construction Com-
pany monthly statements or bills for restoration and
reconstruction of sub-surface vaults from Sixtieth street
to One Hundred and Fourth street which represented
the plaintiff's claims for additional compensation for said
work of restoring and reconstructing said sub-surface
vaults including the vaults between Sixty-fifth street and
Seventy-second street, and which plaintiff claimed to have
kept in accordance with the "white slip system;" that
the monthly statements or bills were twenty-four in num-
ber, are in evidence and aggregate a total of $53,958.43.

The appellants assert that plaintiff was permitted to
recover for a large amount of work on surface and sub-
surface structures which were correctly indicated upon
the "Supplementary D Drawings" by reason of the
action of the referee in ignoring the clause of the con-
tract which provides that no guaranty of accuracy was

to be attached to the drawings; that plaintiff undertook for the lump sum of one hundred sixty thousand dollars to perform all of the work required to be done on the surface or sub-surface structures whether or not the same were correctly indicated upon the " Supplementary. D Drawings," and that the referee was in error in allowing plaintiff additional compensation for work which was correctly indicated upon the drawings.

In support of his argument he calls attention to certain provisions of the contract between Mr. McDonald and plaintiff in substance that the plaintiff undertook to perform for the lump sum of one hundred sixty thousand dollars the work of maintaining, reconstructing and readjusting the sub-service structures irrespective of what was shown on "Supplementary D Drawings." He quotes from a clause of the contract which provides in substance that if in the specifications or contract drawing, or in the provisions of the contract, any additional or other matter or thing requisite for the construction be not mentioned, the same is to be deemed included, and plaintiff undertakes to do the same as part of his work, the prices to be paid him as herein provided to include full compensation for any such additional matter or thing; that the work is to include necessary support and readjustment of vaults, etc., interfered with during the construction of the subway, and thereby such readjustment is to be deemed an essential part of the construction of the railroad; also the provision of the contract requiring the plaintiff to support said sub-surface structures and when necessary to reconstruct the same, the work to be done to the reasonable satisfaction of the owners of the same. Other clauses of the contract are referred to by counsel, some of which are noted in the earlier part of this opinion.

As I read the findings in this case effect was given the contract between the parties.

The cause of action selected by counsel illustrates that conclusion.

The contract provided (A) that as the work thereunder progressed changes might be made in the plans and specifications which might radically alter the amount of work to be done or materials to be furnished thereunder; (B) a reserved right in the board of commissioners to require additional work to be performed or additional materials to be furnished to those set forth in the plans of the rapid transit railroad, the reasonable value of additional work and materials required to be additionally paid to plaintiff, the value to be determined by the engineer of the Construction Company and plaintiff to become entitled to payment for additional work performed or additional material furnished upon the determination of the engineer as shown by special plans and specifications to be issued by him; (C) authority in the board of commissioners to issue supplemental plans accompanied by specifications.

The findings of the referee are supported by reference to the pleadings. In the selected case, the complaint (cause of action number six) alleges (A) upon the direction, authority and requirement of defendants and the board of rapid transit railroad commissioners and under plans made and furnished by the Metropolitan Street Railway Company at defendants' request, (B) plaintiff performed additional work and furnished additional materials in connection with and in addition to the performance of the contract (Exhibit A being the contract between plaintiff and Mr. McDonald) consisting of the construction of sub-surface vaults which it was deemed necessary to remove in the construction of the subway, etc. The answers of defendants contained an admission of the allegation of the complaint in the language quoted heretofore relating to numerous causes of action, and the finding of the referee was in substance the finding also quoted and referred to in connection with the "Force Account Basis" that plaintiff at the special instance and upon the request and direction and requirement of defendants and the

board of commissioners and upon plans furnished and provided by them performed work and furnished materials extra and additional to the work and materials set forth in the plan of the rapid transit railroad referred to in the contract and in addition to the performance of said contract in the construction or reconstruction of a large number of sub-surface vaults which it was necessary to remove in the construction of the subway, the value of labor and material, the method of keeping and rendition of account thereof, verification by the engineer of the Construction Company of the accounts kept and rendered, and generally in the form hereinbefore referred to; that no objection was made by defendants as to the correctness of any of the bills or claims therefor rendered by plaintiff.

The record also discloses findings by the referee which have a direct bearing upon the items under discussion. Preceding the narration of the finding relating to the "Force Account Basis" in this opinion, I called attention to a finding made by the referee in effect that the plaintiff was required to and did perform a large amount of extra and additional work and furnished a large amount of material and labor by direction of defendants. Further findings by the referee are: Defendants included in the monthly estimates made by them from month to month certain amounts on account of extra work sued for in this action. The first monthly estimate was made in July, 1902, and therein was an item of $13,300 stated to be for "pipes, vaults *et cetera* not on the plans." From month to month the same heading was continued and the amount of the previous month's estimates was carried into the estimate then made. As disclosed in finding number thirty, the estimate for May, 1904, was $270,000, and that amount continued to and including October, 1904, which was the last estimate made by defendants. The estimates though headed as stated were not intended to be limited to pipes, vaults, etc., but were an estimate

of bills for extra work. As payments were made on said estimates, plaintiff sought to have defendants specify upon what particular bill they should apply and one Olmsted, representing defendants after the larger portion of this estimate had been made and paid, directed plaintiff to apply the payments made, $270,000, upon bills sent in for extra work under several heads thereon aggregating $397,515.59, embracing the items under discussion "Restoring track vaults," $54,426.47. Thereafter and about December 1st, 1904, plaintiff made out a bill which he presented at a meeting held January 12th, 1905, which plaintiff attended at the request of defendants. Present at the meeting at Mr. McDonald's office were Mr. McDonald, Mr. Deyo, chief engineer of the Construction Company, Mr. Douglas, Mr. Moore and Mr. Olmstead, engineers of the same company, the counsel for the defendants, plaintiff and his brother, one O'Connell, a bookkeeper for plaintiff and one Henning, an engineer in the employ of plaintiff.

The first ten items on the bill presented by plaintiff consisted of charges, including the vaults, aggregating $397,519.59, and were the same items and amounts upon which plaintiff had been directed to credit the $270,000, and that credit together with a statement showing the balance $127,319 unpaid appeared on the bill. Following the ten items were fifty-four several items of extra or additional work aggregating $169,210.21. The referee found that no objection was raised at the meeting by any person present that the monthly estimates aggregating $270,000 were not proper or that the application of the payment applied was not a proper credit, or as to the correctness of the balance of $127,319, but it was admitted by all present that the first ten items were extra work for which plaintiff was entitled to be paid; thereupon, the remaining fifty-four items in the bill were considered separately and the greater number of them agreed upon and afterwards paid. At the same meeting claims were

made by plaintiff other than those appearing on the bill and were discussed, but not acted upon. Thereafter and prior to the commencement of this action, the amounts paid plaintiff, $270,000, above referred to, were applied by defendants with the acquiescence of plaintiff as a payment upon the regular work under the contract, and such payment was allowed defendants as a credit under the first and second causes of action herein.

Additional circumstances in this case negative the argument of counsel for appellants. In his brief, he analyzed causes of action numbers four, five, six, seven and fourteen, which causes of action sought a recovery for reconstruction of drainage, conduits, ducts, vaults, water and gas pipes, all of which were surface or sub-surface structures, for which the referee awarded to plaintiff $289,805.20, of which sum $51,651.57 was awarded on account of reconstruction of vaults, the item selected and above discussed. The answer of each defendant for a separate defense set out the provisions of the contract relating to additional work, the necessity of a determination of the value of such work by the engineer of defendants, as well as a final certificate to be made by him. That on October 18th, 1906 (which was two months after the commencement of this action), the engineer made a final statement in writing under the contract, a copy of which is annexed to and made a part of the answers, and is headed "Final Certificate, Decision and Determination, Regular and Additional Work, Sub-section No. 6, Contract No. 1." In that paper the engineer of defendants included the work above described and certified the value of the same at $238,968.59. As to cause of action number six, under consideration, the referee's finding was $51,651.57, while the amount certified in the decision by the engineer, annexed to the answer, for vaults was $47,157.13.

In the brief of counsel where the stated causes of action are discussed, he states: "It is true that in connection

with almost all of these different classes of work the plaintiff was required to perform certain work additional to that prescribed by the contract plans and specifications. The additional work in this connection was due for the most part to changes of plans and enlargement of the rapid transit railroad which the plaintiff contracted to build. But there is no admission in the answers that all of the work done under the various causes of action above enumerated was additional work. There is no admission as to the amount or extent of additional work * * *."

I believe I have demonstrated from the findings in this case that the award made by the referee was justified, that the defendants by their admissions and a practical construction of the contract evidenced their liability to respond to plaintiff for the work and material for which judgment has been awarded assuming error of law in the admission of evidence and allowance of interest did not arise, and that plaintiff was not required as a prerequisite to a right to maintain the action to procure a final certificate of the engineer, which question will later be considered. The fact must not be overlooked that the affirmance of the judgment was unanimous, and discussion upon the facts is thereby rendered useless. Our review of the foregoing cause of action is due alone to the amount involved and the lengthy consideration given same by appellants' counsel and by reason of the alleged errors of law presented by him.

Counsel for appellants argues that error was committed by the referee by reception in evidence of the account books of plaintiff, and the daily reports and monthly summaries rendered to defendants as proof of the quantity of work performed and materials furnished and the value of the same. This criticism applies not only to the items which we have just considered, but to all items based upon what has been termed the "Force Account Basis."

Summarized, his objections are that all laborers and employees were not called as witnesses to establish the correctness of the evidence received; that at least thirty-three foremen were not called as witnesses and their absence was unaccounted for; that two of the superintendents of plaintiff were not called; that inspectors of the rapid transit and superintendents of teams were not called; that different bookkeepers had been employed by plaintiff, one of whom was not called, and he argues that the original white slips if produced could not have been received as original memoranda and under plaintiff's proof because the necessary foundation had not been laid by calling all the foremen.

That assuming that the necessary foundation had been laid by the testimony of all the foremen to admit the original white slips, no secondary evidence of their contents could be received.

That even assuming that secondary evidence of the contents of the white slips could be received, the book entries and the summaries and white slips transcribed therefrom are not competent for such purpose.

That assuming that the original white slips had been duly authenticated by all the foremen and were offered, they would not be competent because they represent or embody conclusions.

That the use made by the defendants of the plaintiff's account books on the trial did not give them the competency that otherwise they would not possess.

The competency of this evidence cannot be established by an application of the rules governing actions on an account stated.

A large number of decisions are cited by counsel bearing upon the rules of evidence governing the admission of account books in evidence, but in my opinion the various rules of law called to our attention are not controlling or applicable to the case at bar. The question of the competency of the evidence criticised must be determined after

a review of the facts disclosed in the findings of the referee, which have been affirmed.

Under the agreement of October 1st, 1901, designated "Force Account Basis" which embraces the findings we have above considered, the system of keeping accounts was devised and directed by defendants and their engineer and servants; the plaintiff was directed to keep the accounts according to the method adopted by defendants and he followed the directions given him. The referee found that the books had been correctly kept. Daily entries were made upon the forms prescribed by defendants, certified by the foremen, examined and approved by the superintendent, and a copy thereof daily sent to defendants. Monthly summaries were, as directed, forwarded to defendants, certified as correct and examined by their engineer. The engineer and "checkers" of defendants verified not only the additional work and materials furnished, but likewise the entries on plaintiff's books by frequent inspection, and when any discrepancy was disclosed between their computations and the reports of the servants of plaintiff all errors were eliminated and all suggested corrections immediately made and entered. Comparison was made by defendants of the daily reports with monthly summaries before certification of the same by their engineers. The books of plaintiff were kept at an office on Eighty-sixth street and together with all daily reports, bills and papers were at all times open to inspection and examination by defendants and were in fact examined and inspected by them practically every day. The defendants had a copy of every entry on plaintiff's books, and they also had the reports of the checkers and engineers employed by them to measure up and keep account of the additional work and material supplied by plaintiff. From time to time payments on account thereof were made by defendants.

In view of the magnitude of the work, the thousands of employees necessary to perform the same, and the sys-

# 388 BRADLEY v. McDONALD.

tem of keeping the accounts having been prescribed by the defendants, we may assume that the method employed was in accordance with the usages of business at that time. The referee found that defendants' counsel conceded upon the trial that in cases where extra work was required which was not of a character in the list of unit prices, the practice of allowing the reasonable value of the labor and material prevailed, and that 15% was added to the cost of labor, and 10% to the cost of material, and that was the schedule adopted throughout the construction of the subway including plaintiff's work.

The daily and monthly reports, the books wherein all records were correctly kept, became a "mutual" account between the parties. Such books and records did not alone constitute the accounts of the plaintiff; they were kept for the use of defendants as well as plaintiff, inspected, checked up, discrepancies adjusted, a copy of the entries daily sent to defendants, followed by monthly summaries which were certified by defendants as correct, and thereby embodied the accounts of the defendants. The facts so fully stated in the findings of the referee lead to the conclusion that the books and papers were, as between the parties, competent as evidence of admissions. The accounts were presented to the defendants and retained by them without criticism or objection to the correctness thereof. An account thus presented has ever been treated as an admission of the correctness of the same, and a witness presenting the account for payment held competent to testify to such fact. As between the parties here all of the books and records were properly received in evidence as admissions of the defendants. (1 Greenleaf on Evidence [16th ed.], sec. 199; *Rockwell* v. *Merwin*, 31 N. Y. Super. Ct. 484; affd., 45 N. Y. 166.) While the opinion of this court, in the case last cited, does not deal with the question of evidence, its importance could not have been overlooked. Had the General Term of

the Superior Court committed error on that question, the judgment would not have been affirmed by this court. The facts in that case are stated in the case as reported below, in 31 Superior Court, 484.

Under the findings of the referee the books, daily and monthly summaries, were admissible within the principles prevailing with reference to books and accounts of a copartnership (*Cheever* v. *Lamar*, 19 Hun, 130; *Fairchild* v. *Fairchild*, 64 N. Y. 471, 480; *Hotopp* v. *Huber*, 160 N. Y. 524), the rule prevailing as between guardian and ward (*Fowler* v. *Hebbard*, 40 App. Div. 108) and between trustee and *cestui que trust*, tenants in common, joint tenants and parties engaged in joint adventure, etc.

Having reached a determination that the books and papers were properly received in evidence, we may next discuss the allowance of interest made by the referee to which exception is taken by counsel for the appellants. The referee allowed interest on the amounts found due from and after ninety days after the completion of the work. That time was fixed by the referee due to the fact that payment under the contract was to be made ninety days after the completion of the same. Having determined that the books and records kept by the plaintiff at the direction of the defendant were the mutual accounts of the parties and that the defendants were possessed of all information which the plaintiff had in relation to the accounts, it must necessarily follow that the amount of the indebtedness of defendants was capable of ascertainment by defendants at any time and within the ninety days after the completion of the work. Defendants had the same facility for determining the amount of their indebtedness to plaintiff as plaintiff had of determining the amount of indebtedness to him. A failure on the part of the defendants so to determine the amount of their indebtedness and pay the same would render them legally liable for interest upon the amount found due. (*McMahon* v. *N. Y. & E. R. R. Co.*, 20 N. Y.

463; *Degnon-McLean Cons. Co.* v. *C. T. S. D. & S. Co.*, 99 App. Div. 195; affd., 184 N. Y. 544; *Sweeny* v. *City of N. Y.*, 173 N. Y. 414.) In further support of the right of the plaintiff to recover interest is a finding of the referee that demand of payment was made earlier than the date from which the referee allowed interest; that plaintiff persistently throughout the progress of the work sought and demanded of defendants settlement and payment for the work and claims sought to be recovered for in this action, and that after the railroad was accepted by the city and put in operation, prior to October 23d, 1904, plaintiff insisted upon a full and final settlement of the claims involved in this action.

A further item criticized by counsel for appellants is an award made by the referee to plaintiff for $42,069.35 on account of so-called slides.

The referee found that defendants required plaintiff to remove a large amount of rock, earth and material outside of the "net section" of the subway, and determined the quantity and value of the work; that the work became necessary because of a change of plan made by defendants and the board of commissioners after the making of the contract between Mr. McDonald and plaintiff by which the subway was widened on each side eight and one-half inches for the purpose of laying ducts, and also further greatly widened in places for the purpose of laying extra tracks and for the purpose of erecting larger stations; that plaintiff had properly braced the side walls of the tunnel with timber to prevent the earth and rock from falling into the tunnel, but notwithstanding such precautions, owing to faults or seams encountered in making the excavations necessary for the widening, tho slides occurred and destroyed a large quantity of timbering plaintiff had constructed; that an agreement was entered into between Mr. McDonald and plaintiff that if plaintiff would do the necessary timbering at his own expense to take the place of the timber destroyed and would take

care of the situation, defendants would pay plaintiff for removing the earth and rock and for back-filling the space left after the slide occurred; that the plaintiff acquiesced and the matter in difference was then adjusted and plaintiff performed the work; that Mr. McDonald and plaintiff further agreed that the engineer of the board of commissioners should take measurements of the quantity of earth and rock removed; that the engineer did make such measurements and placed same on " excess sheets " which were correctly kept, and that it was conceded on the trial that the sheets and the measurements appearing thereon were correct and correctly made; that plaintiff performed the work as agreed upon and was entitled to recover for the removal of 9,376 cubic yards of rock and 5,681 cubic yards of earth.

Counsel for both parties in a discussion of this item as well as other items quote from the evidence in the record and discuss facts at length, regardless of the effect of the unanimous affirmance. In view of the findings of the referee that the work was performed under a special agreement it is unnecessary to review provisions of the contract or findings of the referee called to our attention. Either party to the contract was at liberty to insist upon a strict performance of the same, likewise either party was privileged to waive any provisions of the contract made for his benefit. It was competent for the parties to enter into a special agreement for the work in question or for other work; they had a right to contract specially as to the method in which the work under consideration should be carried on, the manner in which account of the same should be kept, how and when payments should be made therefor, and to waive written orders for the same by the engineer; such right extended in like manner to the agreement made relating to the " Force Account Basis." All such agreements were clearly within the scope of the contract and the work performed was rendered under the terms of such contract as modified by the

parties. I pass to the competency of the evidence offered by plaintiff as to the amount of material removed.

Pursuant to the agreement between Mr. McDonald and plaintiff, the engineer of the board of commissioners made measurements of the extent and quantity of material removed and placed the same on the "excess sheets." The "excess sheets" known as the "yellow sheets" contained the total quantities of excavation of earth and rock from block to block, but the same were not finally made up until after the completion of the work. Included in the excess sheets among other things was all earth and rock excavation due to the material which slid into the tunnel; all quantities excavated outside the net section as part of the excavation within the net section; all excavation due to reconstruction of track drainage system so far as the same was outside the net section, etc.

January 5th, 1906, the plaintiff rendered an account for work performed and extra and additional work claimed for, to the engineer of the Construction Company. Included in said account were items for rock excavation, 20,706 cubic yards, and for earth excavation, 26,830 cubic yards, aggregating at price fixed thereon $122,049.80. The "excess sheets" are in evidence and show the total amount of excavation of earth and rock from Sixtieth to One Hundred and Fourth street, as being the quantities above described and included by plaintiff in his statement of account. The "excess sheets" did not separately state the amount of earth and rock excavation for which the referee made allowances to the plaintiff, which was materially below the quantities above stated. It became necessary upon the trial of this action that the plaintiff should offer evidence as to the quantity of work for which he sought to recover under the special agreement, which quantity was included in the "excess sheets" as stated. For that purpose he called a witness named Hipkins who was an assistant engineer of the board of commissioners assigned to supervise on behalf of the city the construc-

tion work on section 6A. The "excess sheets" were received in evidence, presented to the witness and his attention as well as that of the referee was directed to the fact that while the sheets showed the entire excess the same was not all due to the slides. It was then conceded by counsel for the defendants that the sheets show the excess excavation outside of the net section correctly. Thereupon plaintiff sought to establish by the witness the total amount of excess shown on the sheets and the amount which was due to the performance of the contract, upon the theory that the difference would be the amount performed by plaintiff under the agreement with Mr. McDonald. The witness was permitted to testify from the sheets the fair typical amount of excess beyond the net section line in the construction of the subway under ordinary conditions, and stated in detail the actual and the typical excess block by block. Counsel for appellants argues that the opinion of the witness was not only based on facts not in evidence but was predicated on assumptions which completely disregarded the facts disclosed by the excess sheets. I am of opinion that the evidence of the witness Hipkins was properly received. The plaintiff had a right to keep account of the excess quantity of excavation or to rely upon the agreement made with Mr. McDonald, wherein the latter agreed to be bound by the measurements made and account kept of the same by the engineers of the commissioners. It would not be a violent assumption that the purpose of these measurements and quantities shown on the excess sheets would be of material benefit to Mr. McDonald should he make claim against the city for excess excavation caused by the widening of the tunnel as found by the referee, and that the sheets embraced all of the *excess* excavation of rock and earth upon section 6. By reason of the manner in which the account was kept the plaintiff was placed at a disadvantage by the failure of the engineers to separate the excess work performed by plaintiff under the agree-

ment; plaintiff thereupon had recourse to the testimony of experts, and produced evidence which tended to show the amount of excavation performed by him. The defendants were at liberty to dispute the evidence adduced by plaintiff by the engineers who made measurements and entered the same upon the excess sheets. If such evidence was produced a question of fact was presented, the same was determined by the referee and we are required to assume that his findings were substantiated by evidence.

Upon the argument of the appeal at the Appellate Division, counsel for plaintiff stated that the allowance made by the referee was $1,274.50 in excess of the amount disclosed by the evidence adduced on the trial by plaintiff. The concession was evidently overlooked by that court, and counsel in his brief on this appeal reiterates the statement. In view of that concession allowance should be made to defendants for such excess.

The argument of counsel that the submission by plaintiff of his claim for excavation contained in his bill of January, 1906, amounted to an election which precludes him from now resorting to the compromise agreement found by the referee is not well founded, in view of the fact to which reference will hereinafter be made that the engineer never prior to the commencement of this action passed upon or made a certificate of the work and additional work performed by plaintiff.

Some of the remaining findings by the referee were based upon concessions made by the defendants upon the trial as to the correctness of the items covered by such findings. Other findings were based upon special agreements made by the plaintiff and Mr. McDonald and items conceded as found by the referee in the interview between Mr. McDonald and others to which reference has hereinbefore been made. The principles of law applicable to the questions that have been considered are controlling as to the remaining items found by the referee.

Appellants complain of alleged error on the part of the referee as to the final certificate of the chief engineer. The complaint alleged that the requirement of the contract that a certificate of the engineer should be obtained was waived by the defendants and the plaintiff instructed to do the work and keep account thereof as hereinbefore stated, and that the engineer would certify and allow the value of the same, but said engineer wrongfully and unreasonably and in fraud of plaintiff's rights refused to make such determination, neglected to prepare a final statement, and refused to give any determination or the certificate specified in the contract. The referee found as matter of fact that prior to the commencement of the action the defendants waived the making and procuring of the final certificate of the chief engineer of the Construction Company, which waiver was acquiesced in and acted upon by the plaintiff; that the defendants had placed a practical construction upon the contract between the parties to the effect that as to extra and additional work no final certificate of the engineer was required determining the amount or value of additional work, which construction was acquiesced in by the plaintiff; that the final certificate of the engineer was not made until the 18th of October, 1906 (two months subsequent to the commencement of this action); that the same was unreasonably withheld by the defendants, and the failure to make it sooner was in fraud and violation of plaintiff's rights; that the same as finally made was made upon a wrong theory and erroneous construction of plaintiff's contract. This finding of fact by the referee is conclusive upon the appellants here.

Counsel also criticizes evidence admitted on the trial of conversations between Mr. Moore and Mr. McDonald wherein admissions were made by Mr. McDonald as to the amount of extra and additional work performed and materials furnished by plaintiff and the amount plaintiff should be paid for the same. It appears from the find-

ings that Mr. Moore was sent for by the defendant, Mr. McDonald, and an interview was had between them at which Mr. McDonald took up the various items of the plaintiff's claim. Mr. Moore was requested to state what took place at that interview. No objection was made to the question, and Mr. Moore in considerable detail stated the conversation between Mr. McDonald and himself. Later on counsel for defendants moved to strike out the evidence on the ground that it stated a conclusion; that the evidence could not be competent unless what Mr. McDonald dictated to his stenographer relating to the items of the plaintiff's bills was made use of in some way; counsel was asked by the referee if objection was made on the ground of negotiations for a settlement; counsel replied that it was on the ground that it became embodied in a written instrument which was dictated to a stenographer, and if nothing further was done, though dictated to a stenographer, it is not competent or binding, and that the method employed was merely a makeshift to secure the result which the referee had ruled as incompetent. The question then was asked the witness: "I am asking you if you can state what Mr. McDonald said in reference to any of these bills set forth in the complaint?" Counsel further objected that anything Mr. McDonald might have said appears to have been for the purpose of informing himself; that he was not negotiating in any fashion to bind himself. The objection made did not raise the question which counsel now seeks to argue, namely, that recommendations of Mr. McDonald were made in an effort to compromise plaintiff's claims. Later on, and after the then trial counsel had been superseded, a motion was made to strike out the evidence, which motion was denied. Plaintiff was not present in person or represented by any one authorized to represent him at the interview. The admissions made by defendant, Mr. McDonald, were voluntarily and unqualifiedly made; were not adduced in the course

of negotiations for a settlement, and were properly received in evidence. (*Bartlett* v. *Tarbox*, 1 Keyes, 495, 501; *Marvin* v. *Richmond*, 3 Denio, 58; *Armour* v. *Gaffey*, 30 App. Div. 121, 129; affirmed, 165 N. Y. 630.)

A further question presented by counsel for appellants is the disallowance of a counterclaim for moneys alleged to have been paid by Mr. McDonald in satisfaction of a judgment obtained by the Barber Asphalt Company against him.

Under the terms of the contract provision was made that the plaintiff might be required to furnish satisfactory evidence of the payment by him for all labor and all materials furnished in the execution of the work, and any amounts due for labor or materials unpaid for, Mr. McDonald was authorized to pay from any moneys due to the sub-contractor, plaintiff, and charge the amount so paid to him, the plaintiff.

The referee found, as matter of fact, that the work of restoring the asphalt pavement on sub-section six was done by the Barber Asphalt Paving Company upon receipt of written orders from Mr. McDonald, which were issued upon receipt by Mr. McDonald of a written request from the plaintiff to have the company restore the asphalt pavement; that the plaintiff had not paid the paving company for *all* the asphalt pavement restored by it, and had not paid for *all* of the 83,184 square yards of asphalt pavement restored by it on said sub-section six; that prior to the commencement of the action the paving company brought suit against Mr. McDonald to recover for the balance of the asphalt pavement restored on sub-section six which had not been paid for by the plaintiff, which action resulted in a judgment against Mr. McDonald by which he was required to and did pay the sum of $51,229.53 to the paving company, including interest and costs for the balance of said work, which was paid on or about the 28th day of October, 1905.

Upon the trial of the present action the judgment roll

in the case of the Barber Asphalt Paving. Company against Mr. McDonald was offered and received in evidence against objection made by plaintiff. The judgment entered in said action, including $483.84 costs, aggregated $77,924.51. The defendants sought to offset $51,229.53, but failed to offer evidence of the discrepancy between the amount sought to be offset and the amount of the judgment. No evidence was offered by defendants to explain what items, if any, included in the Barber judgment, were for work which the plaintiff was obliged to perform and which he had been paid for. Letters were received in evidence from the plaintiff to Mr. McDonald requesting him to order certain pavement to be restored, but these requests do not correspond in all particulars with the items on which the Barber judgment was based, and as a conclusion of law the referee found that the amount of $51,229.53 sought to be offset had not been established by the evidence. The plaintiff was not a party to the action brought by the Barber Asphalt Paving Company against Mr. McDonald and it does not appear that plaintiff was called upon by Mr. McDonald to appear in said action or defend the same. The judgment in favor of the paving company against Mr. McDonald was not evidence as against plaintiff of any liability upon his part. If defendants were entitled to offset any portion of the amount paid by Mr. McDonald by reason of said judgment, it was incumbent upon them to establish the amount thus paid, if any, which was chargeable to plaintiff under the contract. Defendants did not supply such evidence. They relied upon the judgment roll which awarded the paving company a judgment against Mr. McDonald for upwards of seventy-seven thousand dollars to establish an alleged liability of plaintiff to defendants of $51,229.53. In the absence of more satisfactory evidence on that subject the conclusion of the referee, that the offset sought to be charged plaintiff has not been established by the evidence or proven as

a valid offset or charge against the amounts or claims established by plaintiff or as a valid claim or liability against plaintiff, was not error.

Additional questions arising in the case were presented upon the argument and in the brief of counsel for the appellants, all of which have received consideration, including the propositions that numerous findings of the referee were inconsistent with findings made by him on request of defendants. An examination of the voluminous findings made by the referee in connection with the requests to find submitted by defendants marked "Found" by the referee fails to disclose that such findings are inconsistent or contradictory or that other conclusions of law based on requests to find found by the referee would necessarily follow.

The several exceptions presented for our consideration and all other questions brought to our attention have been considered. We do not find error therein. The judgment should be modified by deducting therefrom $1,274.50 and interest on that amount from January 5, 1906, and as so modified affirmed, with costs.

WILLARD BARTLETT, Ch. J. (Mem.). I concur in the opinion of Brother HOGAN in this case, except so far as it deals with the opinion evidence of the witness Hipkins, which I think was incompetent and should not have been received. I think, however, that there was additional uncontroverted evidence to sustain the finding of the referee as to this matter, and, therefore, that the error in receiving the testimony of Mr. Hipkins can be disregarded.

HISCOCK, J. (dissenting). I dissent from the affirmance of so much of the judgment appealed from as awards to the plaintiff the sum of $42,065.35 for extra excavation claimed to have been necessitated by slides.

I concur in the view expressed by Chief Judge BARTLETT that the so-called expert testimony of the witness

Hipkins, which was received for the purpose of sustaining this claim was incompetent. The mere circumstance that it may have been difficult for the plaintiff to present competent evidence to sustain this item did not authorize or justify the reception of incompetent evidence, and I think the evidence in question was clearly such. Further than this I am not able to adopt the view that this error was so inconsequential that it can be disregarded. While it is possible that there was slight evidence in the form of a very general admission by McDonald concerning this claim, I think that a consideration of the opinion and decision of the referee makes it very plain that the important and controlling testimony which led him to allow this item was the incompetent evidence in question, and if this is so the error ought not to be disregarded.

COLLIN, CUDDEBACK, SEABURY and POUND, JJ., concur with HOGAN, J., and WILLARD BARTLETT, Ch. J., concurs in memorandum; HISCOCK, J., dissents in memorandum from the affirmance of the award of $42,065.35 on account of excavations due to slides.

Judgment accordingly.