UNITED STATES ex rel. BROWN–KETCHAM IRON WORKS et al. v.
ROBINSON et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1914.)

No. 211.

UNITED STATES (§ 67*)—CONTRACTS—SUBCONTRACTORS—ACTION ON BOND—
TIME—"FINAL SETTLEMENT."

Act Cong. Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1911, p. 1071), authorizes an action against contractors with the United States for the construction of public buildings and their sureties, to be instituted in the name of the United States for the benefit of subcontractors, etc., on specified conditions, one of which is that, where the United States has not sued the principal contractor, the action for the benefit of subcontractors must be instituted, if at all, at least six months and not more than a year after complete performance of the contract between the United States and the contractor and "final settlement" thereof. *Held*, that "final settlement," as so used, does not mean the final determination of all outstanding controversies between the government and the contractor arising out of the contract, but an official indication that the government is satisfied with the contractor's performance and by some official act evidences an intention to make no effort to collect anything further from the contractor or from the bond, so that where a basis of settlement was submitted by the supervising architect, and the Secretary of the Treasury approved the same in writing and settlement was made upon that basis, such approval constituted a final settlement within the statute.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*

For other definitions, see Words and Phrases, vol. 3, p. 2804.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the District Court, Southern District of New York, entered on the report of a referee, in which judgment the complaints of the several plaintiffs in error were dismissed. The defendant Robinson contracted with the United States to do certain interior work on the New York custom house at Bowling Green. The other defendants are surety companies who executed bond to the government for the faithful performance of his work. The plaintiffs are Robinson's subcontractors, or supplied materials for the work.

The right of action herein is asserted by the several plaintiffs as having been created by the Act of Congress of February 24, 1905 (33 Stat. 811) which superseded the Act of August 13, 1894 (28 Stat. 278, c. 280 [U. S. Comp. St. 1901, p. 2523]).

The act relied on authorized an action against persons contracting with the United States for the construction of public buildings and against their sureties to be instituted in the name of the United States for the benefit of subcontractors, etc., on certain conditions prescribed by the act. The only one of these conditions material to the case at bar is that where (as here) the United States has not sued the principal contractor, the statutory action for the benefit of subcontractors must be instituted, if at all, at least six months and not more than one year after "complete performance of said contract" between the United States and the principal contractor "and final settlement thereof."

The action. was begun October 15, 1909, when the summons was given to the marshal for service. The only question presented to this court is whether between October 15, 1908, and April, 1909 (respectively six months and one year before the action was begun), there had taken place a "final settlement" of the completely performed principal contract, such as was intended and referred to by the language of the statute.

The referee, having come to the conclusion that there had been'no "final settlement," excluded all the testimony as to the performance of the various contracts between Robinson, the government contractor, and his subcontractors and dismissed the complaints of the original plaintiff and of all the other intervening plaintiffs. The full text of the relevant provisions of the act will be found in the margin at the foot of this opinion.

F. Hulse, of New York City, for Ivins and others.

F. M. Brown, of New York City, for Robinson.

J. B. Coleman, of New York City, for Yawger.

M. L. Fearey, of New York City, for Brown-Ketcham Iron Works and others.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. [1] The sole question to be determined here is the meaning of the phrase "final settlement of the contract" between the original contractor and the government. Does it mean that all outstanding controversies between the government and the contractor arising out of the contract must be finally determined? Or is it sufficient if the government has officially indicated that it intends to make no effort to collect anything further from the contractor or from the bond? The statute is awkwardly and inartificially expressed, but it seems to us it may be easily construed by applying the well-recognized rule of ascertaining first what was the difficulty to remedy which the statute was passed and second what was the method adopted to remedy such difficulty.

Under the old act, the United States was exposed to a loss of the security it had provided to secure a proper execution of the contracts it had let, in cases where the contractor became insolvent. Subcontractors and materialmen, sometimes before the work was even near completion, could proceed independently to secure their pay out of the proceeds of the bond, thereby reducing it to such an extent that the government might get nothing. Manifestly this was improvident legislation and it was undoubtedly to remedy this difficulty that the act was passed. The new act provided in the first place that suit to enforce the bond should be brought by the United States and materialmen be allowed merely to intervene in that suit. There might, of course, be instances where the government, making no claim against its contractor to recover damages would bring no suit on the bond. In that case the new act provides that the materialmen may themselves bring such suit. These provisions deal more particularly with the practice.

The more important part of the new act is found in the clauses which provide in substance that no materialman shall take one dollar out of the fund which the bond produces, until every dollar due the United States under the contract shall be fully paid. Keeping these clauses in mind, it seems to us that a reasonable interpretation of the

disputed phrase is to be readily found. In determining the time when materialmen may begin suit, it would not do to fix it at some day "after complete performance" merely. Defective work, damages for delay, and other matters might give the United States some claim which it might not decide to prosecute until some time after the work was turned over, apparently complete. The date was, therefore, fixed relatively to "complete performance of the contract and *final settlement thereof.*" We take it that these italicized words refer to the time when the proper government officer, who has the final discretion in such matters, after examination of the facts, satisfies himself that the government will accept the work, as it is, without making any claim against the contractor for unfinished or imperfect work, damages for delay or what not, and records that decision in some orderly way. Six months after that date, materialmen may begin suit. This construction protects the government against the defect of the old act, viz., that its suit to recover might prove barren, because the money is gone. We can see no reason why Congress should have provided that, when the government claims nothing from contractor or sureties, all others must wait still further until some claim of the contractor against the government for having underpaid him reaches a conclusion. Such suit can in no way affect the fund provided by the bond out of which the government might have satisfied its claim, if it had any. In other words we see no reason for holding that the final settlement must be mutual, in cases where the government makes no claim against the contractor.

Under the statute whenever the government does make claim, it will be paid first, since the act says:

"After paying the full amount due the United States, the *remainder* shall be distributed pro rata," etc.

The time fixed by the statute for beginning a subcontractor's suit is any time within the period extending from six months after completion and final settlement to one year after completion and final settlement.

Referring to the referee's report, we find a letter of the supervising architect to the Secretary of the Treasury March 13, 1908, and a supplementary letter July 1, 1908, recommending final settlement on the basis of deducting from the 15 per cent. held up on periodical payments a certain sum for overtime damages and other sums to cover omissions, defects, and unfinished items. Since the amount retained exceeds the aggregate of these sums, the proposed settlement contemplated the payment of a balance of some $5,000 to the contractor. This was approved in writing by the Secretary of the Treasury on February 10, 1909, and was a final statement by the head of the department that the contract had been completed to the satisfaction of the government and that after paying over the $5,000 it had no claim to make against the contractor or his surety.

There are decisions, no doubt, to the effect that the United States may repudiate such action by its officers, when a private party could not, and that no lapse of time or laches can bind it; but Congress was not legislating with regard to any such unusual or abnormal cases.

What it had in mind was such a determination as to its rights, by the proper government officers, as might fairly be taken by all persons interested as an authoritative announcement that the government was not a claimant to any part of the proceeds of the bond. When such a determination has been made and six months has elapsed thereafter, then the others interested in the fund may bring their suit. Such a construction does not expose a government to risk of loss. Even after a creditor's action is brought the United States may bring an action in its own name on the bond, if it thinks its officers acted improvidently and that it has some claim of its own against the contractor. If it should bring such action, there would be no ascertainable "remainder" available for creditors until after such action was disposed of; and if the government prevailed in such action there might in some cases be no "remainder" at all.

This suit was begun October 15, 1909, more than six months and less than a year after February 10, 1909, the date when the Secretary of the Treasury recorded the fact that the government had no claim to make on the bond. This was within the statutory period, and the judgment of dismissal must be reversed, except as to one of the defendants. This defendant is J. F. Yawger, as receiver of the Metropolitan Surety Company one of the sureties on the bond. That company was dissolved and permanent receiver appointed by final decree of the state court on January 30, 1909, more than six months before plaintiffs' causes of action accrued. The referee held that the plaintiffs have no claim against the receiver or upon the funds with which he has been intrusted by the state court for distribution among the creditors of the surety company, under the authority of People v. Metropolitan Surety Co., 205 N. Y. 135, 98 N. E. 412, Ann. Cas. 1913D, 1180. No one seems to dispute the correctness of this ruling. As to Yawger, receiver, therefore, the judgment is affirmed; as to the other defendants, it is reversed.

NOTE.

The text of the act construed in the above opinion is as follows:

"That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public improvement or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company or corporation who has furnished labor or materials used in the construction or repair of any * * * building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed pro rata among said intervenors. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor,

and furnishing affidavit to the department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are hereby, authorized to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: Provided, that where suit is instituted by any of such creditors on the bond of the contractor, it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later: And provided, further, that where suit is so instituted by a creditor or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later."