ROBINSON et al. v. UNITED STATES, on Behalf of and for Use of BROWN-KETCHAM IRON WORKS et al.

(Circuit Court of Appeals, Second Circuit. March 18, 1918.)

No. 193.

1. UNITED STATES ☞67(3)—BONDS OF CONTRACTORS FOR PUBLIC WORK—SUITS BY SUBCONTRACTORS—"SUIT SHALL NOT BE COMMENCED UNTIL AFTER COMPLETE PERFORMANCE."

In Act Aug. 13, 1894, c. 280, 28 Stat. 278, as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811 (Comp. St. 1916, § 6923), relating to bonds of contractors for government work, and providing that persons furnishing labor or materials used in such work, who are unpaid, shall have a right of action on such bonds, subject to the prior right of the United States, the proviso that such a "suit shall not be commenced until after the complete performance of said contract and final settlement thereof" must be construed as meaning that the contract must be completed in the sense that the government is satisfied that enough has been done to discharge the surety as to the United States. The sole purpose of the proviso is to protect the United States in its prior right of suit, and where through its proper officers it has formally approved a final settlement with the contractor, the fact that it has retained a part of the contract price to cover the cost of completing certain items of work, or that the settlement is not agreed to by the contractor, cannot operate to postpone the right of unpaid subcontractors to begin suit on the bond until all items in dispute between the contractor and the government have been adjusted.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. UNITED STATES ⚙➡67(3)—BONDS OF CONTRACTORS FOR PUBLIC WORK—SUITS BY SUBCONTRACTORS—"COMPLETE PAYMENT."

Contracts for the furnishing of labor or materials to such a contractor are to be construed, so far as possible, consistently with the main contract, and under a provision in a subcontract that final payment shall be made thereunder "within ten days after the final approval and complete payment of the work by the government" the "complete payment" is the final payment to be made by the United States in accordance with its final settlement, whereby is meant the final amount acknowledged by the United States to be due.

3. UNITED STATES ⚙➡67(3)—BONDS OF CONTRACTORS FOR PUBLIC WORK—SUITS BY SUBCONTRACTORS.

Under a provision in the contract of a subcontractor on a government building requiring the work to be done to the full satisfaction of the supervising architect, made to conform to the conditions of the main contract and the statute, the subcontractor cannot recover on the bond of the principal contractor for items of work which have been condemned by the architect and for which the government has refused to pay.

4. APPEAL AND ERROR ⚙➡1022(2)—REVIEW—FINDINGS OF REFEREE.

Where an action at law has been referred by consent, findings of fact by the referee, supported by evidence and approved by the District Court, cannot be reviewed by the appellate court.

5. UNITED STATES ⚙➡67(2)—ACTION ON BOND OF CONTRACTOR FOR PUBLIC WORK—INTEREST.

In an action on the bond of a contractor for a government building by subcontractors for the furnishing of labor and materials for certain parts of the work, under contracts requiring the principal contractor to pay the reserved part of the contract price "within 10 days after the final approval and complete payment of the work by the government," under the law of New York a plaintiff is entitled to recover interest from the time of final settlement and payment by the government to the contractor for the work covered by his subcontract, provided the amount then due on the subcontract was definitely known or ascertainable by computation, or upon so much of his claim as was undisputed, while as to claims or items in dispute, and which were only liquidated at the trial, interest is allowable only from the date of the judgment.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the United States, on behalf of and for the use of the Brown-Ketcham Iron Works, with the Sykes Steel Roofing Company, Jacob H. Shaffer, as trustee for the creditors of the Robert C. Fisher Company, the George S. Holmes Company, the Winslow Bros. Company, the Tiffany Studios, Eastman Bros. & Co., the Long Island Sand Company, and the Philip Rinn Company intervening, against John C. Robinson and the Federal Union Surety Company, impleaded with the Empire State Surety Company. Judgment for plaintiffs, except the Philip Rinn Company, and defendants and said company bring error. Affirmed, subject to condition as to certain claims.

Writ of error to review a judgment entered on July 5, 1917, in favor of certain plaintiffs and intervening petitioners. Plaintiffs in error were defendants below, and will be referred to as defendants. Defendants in error were plaintiffs below, and will be referred to as plaintiffs. Following is a schedule show-

⚙➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing the name of the successful parties and the total of principal, interest, and costs for which recovery was had:

| Name | Total. |
| --- | --- |
| Brown-Ketcham Iron Works | $ 2,059.11 |
| Sykes Steel Roofing Company | 2,295.85 |
| Jacob H. Shaffer, trustee, etc. | 103,924.46 |
| George S. Holmes Company | 6,352.56 |
| Winslow Bros. Company | 19,930.56 |
| Tiffany Studios | 2,765.95 |
| Eastman Bros. & Co. | 15,747.36 |
| Long Island Sand Company | 1,141.63 |

One of the intervening plaintiffs, viz. Philip Rinn Company, was unsuccessful below, and as plaintiff in error here as against defendants below. The main question involved is whether a contract with the United States government had been completely performed at the time this action was begun, and the facts essential to an understanding of that question here follow. The facts in respect of other questions involved will be referred to in connection with the discussion of those questions in the opinion.

Under date of August 30, 1905, Robinson entered into a contract with the Secretary of the Treasury, acting on behalf of the United States, for the furnishing of all the labor and materials and the performance of all the work required for the interior finish of the new custom house then being erected in the city of New York. Under the provisions of Act Aug. 13, 1894, c. 280, 28 Stat. 278, as amended by Act Feb. 24, 1905, c. 778, 33 Stat. 811, Robinson, as principal, and defendants Empire State Surety Company and Federal Union Surety Company, as two of the sureties, under date of October 18, 1905, executed a bond with the following condition:

"The condition of the above obligation is such that whereas, the said John C. Robinson has entered into a certain contract, hereto attached, with L. M. Shaw, Secretary of the Treasury, acting for and in behalf of the United States, bearing date the 30th day of August, A. D. 1905: Now, if the said John C. Robinson shall well and truly fulfill all the covenants and conditions of said contract, and shall perform all the undertakings therein stipulated by him to be performed, and shall well and truly comply with and fulfill the conditions of, and perform all of the work and furnish all the labor and materials required by, any and all changes in, additions to, or omissions from said contract which may hereafter be made, and shall perform all the undertakings stipulated by him to be performed in any and all such changes in or additions thereto, notice thereof to the said sureties being hereby waived, and shall promptly make payment to all persons supplying him labor or materials in the prosecution of the work contemplated by said contract, then this obligation to be void; otherwise, to remain in full force and virtue."

The main contract was subsequently modified, and the obligation of the bond was extended to cover the modified contract, by an agreement of all the original parties to the bond, dated November 16, 1906. The contract was large; the final amount exclusive of extras, being $1,237,325.70. Robinson sublet certain parts of the contract to the plaintiff's or their assignors. These plaintiffs, claiming that they had supplied labor and materials in the prosecution of the work contemplated by the contract, for which they had not been paid, brought this action on the bond. The parties consented in writing to waive a trial by jury and to an order referring the issues to Henry Melville, as referee, and the cause was thus tried.

The findings of fact and conclusions of law, found and recommended by the referee, were adopted by the court below, and judgment was ordered accordingly. A motion to dismiss was made before the referee, on the ground that the court had no jurisdiction, inasmuch as the action was begun prematurely; i. e., before "the complete performance of said contract and final settlement thereof." As to this the statute provides that, if no suit is brought by the United States within six months from "the completion and final settlement of the contract," those who furnish labor or materials may sue on the bond, and further specifies that, "when suit is instituted by any such creditors

on the bond, it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract and not later."

The contract of Robinson with the Peoria Stone & Marble Works (hereinafter called the Fisher contract), later assigned by the subcontractor, the Robert C. Fisher Company, typifies the contracts with the subcontractors:

"In consideration of said party of the second part performing the work herein agreed upon by said party of the second part to the full satisfaction of the supervising architect, said party of the first part hereby agrees to pay said party of the second part the sum of five hundred and three thousand four hundred and seventy-seven ($503,477) dollars in manner following, to wit: As often as said party of the first part shall receive a payment from the government upon the work done by said party of the second part, he shall pay to said party of the second part upon receipt of their statement eighty-five per cent. (85%) of the value of the work done by said party of the second part on which said party of the first part received payment; the remaining fifteen per cent. (15%) to be paid by said party of the first part to said party of the second part within ten (10) days after the final approval and complete payment of the work by the government."

The main contract with the United States was proceeded with, and, as a necessary part thereof, the subcontractors did certain work and furnished certain material claimed by them to be in accordance with their subcontracts. On February 13, 1909, the government supervising architect wrote the following letter:

"Treasury Department,

"Washington, D. C., Feby. 13, 1909.

"New York—New Cu.

"Mr. John C. Robinson, 1 Madison Avenue, New York, N. Y.—Sir: Referring to your contract, dated August 30, 1905, for the interior finish in the new custom house, New York, N. Y., I have to advise you that the final settlement thereof was approved by the honorable Secretary of the Treasury under date of the 10th instant, on the following basis: That deductions be made from your contract to cover omissions, defects, etc., as follows: [Here follow details of the deductions.] That allowances be made to you on account of additional work as follows: [Here follow details.] That the sum of $12,000.00 be retained, with which to complete satisfactorily certain unfinished items existing in the work, with the understanding that the amount remaining, if any, be paid to you after the completion of said items. And that the provision in the contract stipulating the per diem amount of liquidated damages for delay in the completion of the work be enforced, in so far as to charge you for 109 days of the delay, at $420.00 per day, the amount specified in the contract, making a deduction on this account of $45,780.00. After making the deductions and allowances indicated above, there remains due you at this time a balance of $5,040.00 (and the architect for the building, Mr. Cass Gilbert, has this day been directed to prepare and issue a voucher in your favor for said amount), and the collector of customs at New York, N. Y., as disbursing agent, has been authorized to pay the same from funds in his hands appropriated for the building in question.

"Respectfully,          [Signed]   J. K. Taylor,
"C. E. K.   Supervising Architect."

Though the sum specified was tendered by a voucher, dated February 16, 1909, Robinson refused to take it, and always refused to accept payment on the foregoing basis, and therefore claimed below, and claims here, that the time of "the completion and final settlement" or "performance and final settlement" has not yet arrived.

The assignments of error may be grouped under four general subdivisions: (1) That the suit was prematurely brought, inasmuch as the contract had not been completely performed at the time this action was instituted. (2) That no cause of action had accrued to any of the plaintiffs, because, under the terms of their respective subcontracts with Robinson, except so far as the

Brown-Ketcham Iron Works is concerned, there was no payment due them at the time this action was instituted. (3) That certain deductions made by the officials of the United States government in respect of the work performed by the Robert C. Fisher Company should have been deducted from the amount of the judgment entered in favor of Shaffer, trustee for the creditors of the Fisher Company. (4) That the claims of plaintiffs were unliquidated, and interest should only have been allowed from the date of the entry of judgment.

Eppstein & Rosenberg, of New York City (C. Y. Freeman and Dent, Dobyns & Freeman, all of Chicago, Ill., of counsel), for plaintiff in error Robinson.

John T. Easton, of New York City (Louis B. Eppstein and Harry A. Rosenberg, both of New York City, of counsel), for plaintiff in error Federal Union Surety Co.

Eidlitz & Hulse, of New York City (Frederick Hulse, of New York City, of counsel), for defendant in error Shaffer.

Curtis, Mallet, Prevost & Colt, of New York City (E. C. Kindelberger and Walter L. Worrall, both of New York City, of counsel), for defendant in error Winslow Bros. Co.

James J. Farren, of Albany, N. Y., for defendant in error Eastman Bros. & Co.

Burlingham, Veeder, Mastin & Fearey, of New York City (R. R. Allen, of New York City, of counsel), for defendant in error Brown-Ketcham Iron Works.

De Forest Bros., of New York City (William W. Robison and Robert Thorne, both of New York City, of counsel), for defendant in error Tiffany Studios.

Before WARD, Circuit Judge, and LEARNED HAND and MAYER, District Judges.

MAYER, District Judge (after stating the facts as above). [1] 1. The first question which arises is whether the action was brought "six months from the completion and final settlement of said contract." Defendants contend that there has never been any "complete payment for the work by the government," as required by the typical Fisher subcontract, and that until there is such complete payment the subcontractors have no claim against Robinson for the balance held out by him. The meaning of the phrase "final settlement" was settled in United States v. Robinson, 214 Fed. 38, 130 C. C. A. 432. We agree that in that case no point as to the meaning of the words "the completion" was raised or passed upon. In that case the statute was construed according to its purposes, and must be similarly construed here. The decisions of the Supreme Court "have made it clear that the statute and bonds given under it must be construed liberally in order to effectuate the purpose of Congress as declared in the act." Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 Sup. Ct. 614, 61 L. Ed. 1206.

The limitation of time in the statute was intended for the benefit of the United States, and as soon as the rights of the United States on the bond were out of the way the subcontractors had the right to sue, assuming, of course, that their own contracts gave them rights against the main contractor. Illinois Surety Co. v. Peeler, 240 U. S. 214, 36

251 F.—30

Sup. Ct. 321, 60 L. Ed. 609. In other words, when it appears that the United States, through its proper officials, has indicated a determination not to sue on the bond by final settlement, and six months have elapsed, then the security becomes open to those who have trusted to the credit of the main contractor.

It appears from the letter of the supervising architect that final settlement was approved by the Secretary of the Treasury under date of February 10, 1909. It is true that a part of the contract price was reserved for the completion of certain unfinished work, but enough had been completed to satisfy the United States that a final settlement could be made, and such final settlement was in fact made, and if it should later appear that the United States, acting through its officials, was wrong in that regard, it was the United States and none other which took the risk that by intermediate recoveries the subcontractors might so deplete the fund that the United States would bear the loss, if any, if it erred in approving the contract as finally settled. The word "completion," in view of the purposes of the statute, and the attitude of the courts in giving those purposes effect, must be construed as meaning that the contract was completed in the sense that the United States was satisfied that enough had been done to discharge the surety as to the United States. Any other construction would inevitably lead to the defeat of some of the essential purposes for which the statute was enacted. A subcontractor who had performed his work would be compelled to wait for some indefinite period because some other subcontractor, or the main contractor himself by reason of some default or dispute, made necessary the reservation of a certain sum to make good that default or dispose of that dispute. It can readily be seen that in a contract involving, as did the contract at bar, over a million dollars, a subcontractor could be kept out of his money because of a dispute over a comparatively small sum, notwithstanding the fact that the government was satisfied to the point where it no longer looked to the surety bonds. Remembering that the purpose of the statute in this regard was to protect the United States, it follows that there is no merit in the contention that the subcontractor must wait to begin his action until disputes as to completion are finally settled, notwithstanding that the government on its part is entirely satisfied and approves the final settlement of the contract.

[2] After August 10, 1909 (i. e., after six months from the date of final settlement), the subcontractors had the right to begin an action to recover on the bond, assuming that the contractors had defaulted in payment to them under the terms of their own contracts with him. The subcontracts must be construed, so far as possible, consistently with the main contract, and were necessarily drawn with reference to the main contract. The "complete payment" mentioned in the subcontracts is the final payment to be made by the United States in accordance with its final settlement, whereby is meant the final amount acknowledged by the United States to be due. As between the United States and Robinson, the latter may not be satisfied, and may contest the position of the United States, as he is now doing in the Court of Claims; but such controversy on the facts in this case, the construc-

tion of the statute, the main contract, and the subcontracts, does not in any manner affect the rights of the subcontractors as against Robinson.

So to hold is not to rewrite the contracts as between Robinson and the subcontractors, as counsel earnestly contend, but is merely to give the language of the parties the meaning which they intended it should have, for they were referring directly to the contract with the United States, with its necessary security, and it is clear that the language thus used in the subcontracts could never have been intended, in effect, to require the subcontractors to waive their rights upon the bond, or to be postponed indefinitely after the United States had so acted as to discharge all liability on the bond against it, and after the necessary six months had elapsed. We are therefore of opinion that the action was properly and not prematurely brought. Winslow Bros. Co. v. Robinson, 173 Ill. App. 84.

[3] 2. The marble work in the Robinson contract was sublet to the Fisher Company, and Robinson did not do any of that work. In the letter of final settlement, supra, the supervising architect, with the approval of the Secretary of the Treasury, made the following deductions relating wholly to the marble work done by the R. C. Fisher Company: For omission of protective coverings on interior marble work, $2,500; on account of inferior marble in rotunda and main hall, $3,000. Both of these items under the Fisher subcontracts with Robinson were to have been performed to "the full satisfaction of the supervising architect." These items, aggregating $5,500, were allowed by the referee and by the District Judge.

Documentary evidence showed that the supervising architect was not satisfied. Fisher & Co. introduced testimony to the effect that the work was fully and properly done. No testimony was adduced by Robinson to the contrary; his position being that, as the United States had deducted these amounts from him, he could not be called upon to pay the subcontractors the same amounts thus deducted. It also appears that in Robinson's petition to the Court of Claims, after enumerating these two items, with others, he alleged that the deductions were without warrant, in that the provisions of the contract relating thereto had been fully complied with. The referee held that the action of the supervising architect was not "conclusive evidence of dissatisfaction. Under the circumstances, it is consistent with a desire to get even with Robinson for trouble and annoyance," and found "as a matter of fact, the Fisher Company performed its work to the full satisfaction of the supervising architect, within the meaning of its contract." The supervising architect was not called as a witness, and the only testimony as to his attitude consisted of writings in which he demonstrated affirmatively that he was not satisfied. The most that the evidence amounted to was that the architect ought to have been satisfied, not that he was. In the Court of Claims Robinson naturally was insisting that the government wrongly deducted these items; but that position was not inconsistent with his resistance to the payment of items withheld by the government from him.

Whether or to what extent there is any conflict between the decisions of the United States courts and those of the New York courts,

as to the circumstances under which the architect's certificate may be disregarded, we need not now consider. Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106; Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; Martinsburg & Potomac R. R. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; J. H. Sullivan Co. v. Wingerath, 203 Fed. 460, 121 C. C. A. 584; Thomas v. Fleury, 26 N. Y. 26; Nolan v. Whitney, 88 N. Y. 648; Crouch v. Gutmann, 134 N. Y. 45, 31 N. E. 271, 30 Am. St. Rep. 608. But where, as here, the main contract is for work and materials to be done and furnished for the government, and the subcontract is made in reference thereto, it must be assumed that the parties to the subcontract had in mind the relevant statute and applicable decisions of the United States courts. The Fisher Company knew that Robinson would not be paid in respect of any item until the supervising architect was fully satisfied. The supervising architect was not Robinson's selection, nor under Robinson's control, and therefore the provision as to "the full satisfaction of the supervising architect" was a necessary safeguard for Robinson, to which the Fisher Company agreed. Robinson, as against the United States, may assert his rights and seek his remedy; but Fisher & Co. (bearing in mind that the subcontract was made with reference to the statute and the main contract) cannot substitute for the fact of "full satisfaction" the conclusion of court or jury that the supervising architect ought to have been satisfied. In any event, if we go beyond the contract, the evidence fails to establish Fisher & Co.'s right to recovery, in view of such cases as Sweeney v. United States, supra, and J. H. Sullivan Co. v. Wingerath, supra. We conclude, therefore, that the award of $5,500 and interest was erroneous.

While, however, Fisher & Co. cannot recover for these two items, because of lack of the supervising architect's approval, the supervising architect did not have authority to fix the amount of the deductions as between Fisher & Co. and Robinson. If $5,500 is not the correct figure for the deduction, Fisher & Co. may prove the contract price of the rejected items, and thus the correct amount can be ascertained.

[4] 3. The claim of Rinn could be disposed of for the reasons just stated; but, in addition, there was evidence to support the referee's finding that the work was badly performed, and the action being at law, such a finding of fact, approved by the District Court, cannot be reviewed.

[5] 4. The question of interest: The various subcontracts contained clauses as to the date when the reserved payments should be made, substantially similar to that of the Fisher Company contract, as follows:

"The remaining fifteen per cent. (15%) to be paid" by Robinson to Fisher "within ten days after the final approval and complete payment of the work by the government."

The referee allowed interest from such dates, and defendants contend that interest should be allowed only from date of entry of judgment, on the theory that the claims were unliquidated. In determin-

ing this question we follow the New York decisions. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 Sup. Ct. 614, 61 L. Ed. 1206. The latest expression of the New York Court of Appeals on the question of the allowance of interest is found in Faber v. City of New York, 222 N. Y. 255, at page 262, 118 N. E. 609, at page 610, as follows:

"The question of the allowance of interest on unliquidated damages has been a difficult one. The rule on this subject has been in evolution. To-day, however, it may be said that, if a claim for damages represents a pecuniary loss, which may be ascertained with reasonable certainty as of a fixed day, then interest is allowed from that day. The test is not whether the demand is liquidated. Was the plaintiff entitled to a certain sum? Should the defendant have paid it? Could the latter have determined what was due, either by computations alone, or by computation in connection with established market values, or other generally recognized standards? Van Rensselaer v. Jewett, 2 N. Y. 135 [51 Am. Dec. 275]; McMahon v. N. Y. & Erie R. R. Co., 20 N. Y. 463; Gray v. Central R. R. Co. of N. J., 157 N. Y. 483 [52 N. E. 555]."

Going no further back than White v. Miller, 78 N. Y. 393, 34 Am. Rep. 544, the more important New York cases here relevant (in which many other cases are referred to) seem to be De Carricarti v. Blanco, 121 N. Y. 230, 24 N. E. 284, Sweeny v. City of New York, 173 N. Y. 414, 66 N. E. 101, and Bradley v. McDonald, 218 N. Y. 351, 389, 113 N. E. 340.

In Stephens v. Phœnix Bridge Co., 139 Fed. 248, 71 C. C. A. 374, the action was brought to recover the reasonable value of materials and labor. It appeared that the materials and labor were furnished under a contract between the parties, by which the plaintiff undertook to complete certain work at a specified date and "to be subject to a penalty of one hundred dollars per day for any time beyond that day." As performance was not completed within the time specified by the contract, but was subsequently made, and as the defendants accepted the work and paid all sums due, by the terms of the contract, except the reserved payment, the action was not brought upon the contract, but on a quantum meruit. Defendants contended that, the contract not having been performed by plaintiff within the specified time, plaintiff was not entitled to recover, and, in any event, that defendants were entitled to a deduction of $100 per day for delay. The trial judge ruled against these contentions, and allowed defendants to prove the amount of their actual damages caused by the delay. In such circumstances, the amount of damage caused by delay was uncertain, and the court stated:

"The sum owing from the defendants to the plaintiff was uncertain, and unascertainable by computation, at the time of the commencement of the action; it depended, not only upon what should be found to be the reasonable value of the material and services furnished by the plaintiff, but also upon the amount which it should be found ought to be deducted from the plaintiff's claim, and this amount was likewise uncertain, and unascertainable by computation."

On the facts in that case the decision of the court was not inconsistent with the New York decisions. In United States ex rel. Proctor Mfg. Co. v. Illinois Surety Company, 228 Fed. 304, 142 C. C. A. 596, it was stated:

"Interest has been allowed on the various claims beginning May 1, 1914, that being the date of final hearing."

This sentence, if only read in the opinion and unexplained by an examination of the record, might be confusing. The record shows that on September 18, 1914, the court made a final decree, which was not printed, and was not any part of the record on appeal. On October 29, 1914, counsel for complainant and for defendant claimants moved to reopen the final decree and modify the same "by allowing to the complainant and each of the said defendants interest on their respective claims from the time the same became due, respectively." The court on November 12, 1914, made what is called in the record its "final decree as modified," and in that decree provided, inter alia, as follows:

"Ordered, adjudged, and decreed as of the 18th day of September, 1914, that the said final decree entered herein on that day be, and the same hereby is, in all things vacated and set aside. * * *"

In the decree of November 12, 1914, interest is accorded to the various claimants from different periods down to September 18, 1914, the date of the original decree, so that the total of principal and interest in favor of each claimant was the amount figured down to the date (September 18, 1914) common to all as the date of the original decree. The date, however, from which interest was allowed in the case of each claimant, was the date when payment should have been made, on the same principles as are applicable to the case at bar, and the result is that this case of United States ex rel. Proctor Mfg. Co. v. Illinois Surety Company, supra, is an authority precisely in point.

In determining the questions of interest in the case at bar, it is only necessary for us to apply the rules heretofore referred to as laid down by the New York Court of Appeals to the particular facts here presented. The District Court was clearly right in its allowance of interest to the Tiffany Studios, Brown-Ketcham Iron Works, and Sykes Steel Roofing Company.

Winslow Brothers Company: The District Court allowed interest on the Winslow Company's claim from March 30, 1909. At that date so much of the claim as was allowed by the court was liquidated, as the government had paid that amount to Robinson. At the hearing before the referee, the Winslow Company withdrew several of its claims for extras, but such withdrawal does not affect the good claims insisted upon. Spalding v. Mason, 161 U. S. 375, 395, 16 Sup. Ct. 592, 40 L. Ed. 738. The only items in dispute were four in number, the amounts claimed by the Winslow Company being as follows: Item 1, $8,552.50; item 2, $2,475; item 3, $4,895; item 4, $6,470— total, $22,392.50. On or before March 1, 1909, all work done, and material and labor furnished, by the Winslow Company was finally approved by the government, and complete payment made or tendered therefor by the government to Robinson. The government allowed Robinson items 1 and 3 at the same figures as claimed by the Winslow Company, but allowed $2,200, instead of $2,475, for item 2 and $3,-715, instead of $6,470, for item 4—the total of the allowances as made

by the government aggregating $19,362.50, instead of $22,392.50, as claimed by the Winslow Company. The referee allowed to the Winslow Company as against Robinson on these items the $19,362.50. which the government had allowed to Robinson. It is plain, therefore, that the amount on these items had been fixed and computed on or before March 1, 1909, and under the terms of the subcontract were payable from Robinson to the Winslow Company on March 30, 1909. Robinson could have tendered the sum of $19,362.50, or have allowed the same, and left for further controversy the additional amount claimed by the Winslow Company, for items 2 and 4. The facts bring the claim of the Winslow Company well within the Faber and other New York cases, and the interest on this claim was properly allowed.

The Fisher claim: This claim was made up of the contract price and two items liquidated by the architect prior to the date fixed by the referee for interest. The only possible question is of the allowances. Under date of October 14, 1917, the Fisher Company rendered Robinson a bill. There were certain of the extras on this bill which on the trial the Fisher Company did not undertake to prove; otherwise the bill stood as the amount of the Fisher Company claim and extras containing also a statement of the credits due Robinson. This bill shows a balance due the Fisher Company of $71,066.75. This bill was corrected by statement of counsel for the Fisher Company, on the trial, to the effect that Robinson was entitled to a further deduction of $478. The claim of the Fisher Company thus became a claim for $70,588.75. The referee found that the work done by the Fisher Company was in strict accordance with the architect's plans and specifications, and that the Fisher Company had performed all the terms and conditions of its contract. From the claim of $70,588.75 the referee deducted some small extras, amounting to $1,843.55, as follows: Item 1, $161.31; item 2, $4; item 3, $1,020; item 4, $304.95; item 5, $154; and item 6, $199.30—leaving due, according to the referee's figuring, $68,745.20, with interest from March 10, 1909. In the bill rendered by the Fisher Company to Robinson on October 14, 1907, were two items which Robinson contested on the ground that they were extras, and that the government architect had allowed Robinson less than the Fisher Company charged him. One item was for $661.86, and the government allowed Robinson for this item $500.55, and therefore the referee reduced this item to the extent of the difference, viz., item 1, $161.31. The other item was reduced for the same reason from $116.50 to $112.50; vide item 2, $4. The next two items which the architect allowed Robinson were counterclaims, one for the use of the elevator hoist, amounting to item 3, $1,020, and the other for miscellaneous items of labor and materials, amounting to item 4, $304.94. Neither the amount of these items nor the right of Robinson to counterclaim them was questioned at the trial. Two other items—item 5, $154, and item 6, $199.30, respectively—were ruled by the supervising architect as being within the plans and specifications, and were therefore deducted by the supervising architect from Robinson's bill, and consequently were deducted by the referee from the amount claimed by the Fisher Company. These various items

make the total of $1,843.55 with which the referee credited Robinson, and which he deducted from $70,588.75, leaving the balance of $68,-745.20. These items were all susceptible of computation and Robinson could have paid over this net amount on March 10, 1909, reserving for further controversy the small sum in excess thereof. This net amount was ascertainable "with reasonable certainty" as of March 10, 1909. From this amount, of course, should be deducted $5,500, with interest, referred to supra.

Eastman Brothers & Co.: This claim was allowed at $14,829.60, with interest from March 10, 1909, subject to two deductions: (1) For $3,488.80, with interest from March 30, 1907, the amount due the George S. Holmes Company, one of the intervening plaintiffs here-in, for materials furnished and work done for the Eastman Company; and (2) for $658.90, with interest from July 3, 1906, found due the Long Island Sand Company, an intervening plaintiff, for sand furnished to the Eastman Company. In the amount in controversy between the Eastman Company and Robinson were some items which placed the dispute outside of the authority of the Faber Case, in that the true amount could not be ascertained, either with reference to the contract or to the market value of services and materials concerned. On January 20, 1909, however, an interview was had between Roy H. Robinson, as representing defendant Robinson, and one Avery, the assignee of the claim of Eastman Company. On that occasion a statement in detail was gone over, and all the items checked up, with the result that as of that date it was entirely clear that Robinson was indebted to the extent of $12,991.53. Under the terms of the contract between Robinson and the Eastman Company, payment of this amount should have been made in any event on March 10, and therefore interest should be allowed on $12,991.53 from March 10, 1909. Interest on the balance of $1,838.09 should be allowed from the date of filing the referee's report, to wit, April 4, 1917. The deductions for the amounts due George S. Holmes Company and Long Island Sand Company were properly made by the court below. If these modifications as to interest are accepted by the Eastman Company, the correct amount can readily be computed.

The judgment is affirmed, except as to the claims of Shaffer, as trustee, and Eastman Bros. & Co. If Shaffer, as trustee, deducts $5,500, with interest, as heretofore indicated, the judgment as to the Shaffer claim is affirmed; otherwise, reversed. If Eastman Bros. & Co. accede to the amount ascertained after recalculating interest as above set forth, the judgment as to the claim of Eastman Bros. & Co. is affirmed; otherwise, reversed. Judgment dismissing the Rinn claim is affirmed.