UNITED STATES to Use of CRELLIN et al. v. GEORGE F. PAWLING & CO. et al.

(Circuit Court of Appeals, Third Circuit. March 1, 1924.)

No. 3025

1. Principal and surety ⟨key⟩59—Contract insuring for a profit against failure of performance liberally construed.

A contract in which a corporation or person for profit has undertaken to insure the obligee against a failure of performance on the part of the principal obligor should be liberally construed, and not according to the rule of strictissimi juris.

---

**2. United States ☞67(3)—Time of "final settlement" within statute as to time of instituting proceedings on contractor's bond.**

The time of final settlement of contract between United States and a public contractor within Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923), providing that a suit by a creditor on the contractor's bond shall not be commenced until six months after "final settlement," and shall be commenced within one year, was the date when the amount due thereunder was fixed by the proper administrative officer, as evidenced by a letter, and not the date of approval of a voucher issued for such amount.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series- Final Settlement.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by the United States to the use of Edward W. Crellin and others, copartners trading as the Pittsburgh Des Moines Steel Company, against George F. Pawling & Co., principal, and George F. Pawling and another as sureties. Judgment for defendants, and plaintiffs bring error. Reversed, and new trial awarded.

Pierce Archer, Jr., and W. Nelson L. West, both of Philadelphia, Pa.. and B. E. Hinton, of Washington, D. C., for plaintiffs in error.

Mowitz, Solis-Cohen, Scott & Gertsley, of Philadelphia, Pa. (Paul C. Hamlin and D. H. Solis-Cohen, both of Philadelphia, Pa., of counsel), for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

. DAVIS, Circuit Judge. The District Judge who heard this case without a jury held that the plaintiffs below and plaintiffs in error here, instituted this action before it could be legally commenced under the Act of 1894 (28 Stat. 278) as amended in 1905 (33 Stat. 811 [Comp. St. § 6923]), pursuant to which it was brought, and accordingly entered judgment against them. The defendants George F Pawling & Company, on or about September 26, 1918, entered into a contract with the United States for the construction of a seaplane hangar at the Navy Yard at Philadelphia, Pa. On the same day, George F. Pawling & Co., as principal, and George F. Pawling and John Wilde, as sureties, executed a bond to the United States in the sum of $61,781.10 for the faithful performance of the contract and for the payment "to all persons supplying it [the contractor] labor and materials in the prosecution of the work provided for in the aforesaid contract."

On October 3. 1918, the use plaintiffs, a copartnership, doing business as the Pittsburgh-Des Moines Steel Company entered into a contract with the defendant to furnish all the structural steel for the hangar for the sum of $74,302.86. The contract between the defendant and the United States was fully performed, and the contractor was paid. The contractor, however, it is alleged, failed to pay the use plaintiffs a balance of $14,929.72 on the structural steel, and they brought suit for that amount on March 7, 1921. Under the act as amended in 1905, the United States alone may bring suit any time

within six months after the complete performance and final settlement of the contract against the contractor for any claim it may have against him. Creditors of the contractor who supplied him with labor or materials may intervene and have their rights and claims adjudicated in that suit. If the United States, however, does not bring suit within six months, the creditors themselves, as use plaintiffs, may commence action, provided "that where suit is instituted by any of such creditors on the bond of the contractor it shall not be commenced until six months after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later." It is admitted that the work was completed July 24, 1919. The controversy arises over the date of the "final settlement" of the contract.

The plaintiffs contend that "final settlement" was made on August 28, 1920, and the defendant on December 5, 1919, but the learned trial judge found that it was made on September 15, 1920. If he is right, the suit was instituted eight days too soon; but if the defendants are right it was begun three months and two days too late. The sole question, therefore, is the date when "final settlement" was made.

There is no dispute about the facts in this case. They are perfectly clear. Some time prior to August 28, 1920, every question as to the account between the contractor and the United States had been determined except the difference between them as to the amount of liquidated damages for which the contractor was liable on account of the delay in completing the work. That amount was agreed upon, in April, 1920, and a final settlement voucher was directed to be prepared. But, owing to a difference in the figures, through clerical errors or otherwise, as to the amount of the allowance at the Navy Yard in Philadelphia and in the Department of the Bureau of Yards and Docks at Washington, the voucher was not prepared. This difference was the subject of further calculation and adjustment by correspondence between the public works officer in charge of the work at Philadelphia and the chief of the Bureau of Yards and Docks at Washington, who had authority to make "final settlement" of the contract. Finally this matter was settled on August 28, 1920, in a letter from C. W. Parks, who was then the chief of the Bureau of Yards and Docks, to the public works officer. A voucher in accordance with this final determination was prepared on September 2, 1920, and approved by the defendants on the same day. It was forwarded to the Bureau of Yards and Docks and approved by the chief on September 15, 1920, and was paid on September 27, 1920.

As above stated, the defendants contend that the date of final settlement was made on December 5, 1919, when the contractor was paid about 80 per cent. of the amount due him; but this cannot be the date of final settlement, because the damages for delay had not at that time been determined, and it was then impossible to fix the amount due the contractor on final settlement. Was the final settlement of contract made on August 28, September 2, or September 15, 1920?

[1] The purpose of the act was to secure priority to the United States, and thereafter to secure payment to persons who had supplied labor or materials in the prosecution of the work covered by the con-

tract. The provision of the act was a beneficent one for the subcontractor. A contract in which a corporation or person for profit had undertaken to insure the obligee against a failure of performance on the part of the principal obligor should be liberally construed, and not according to the rule of strictissimi juris. Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 426, 24 Sup. Ct. 142, 48 L. Ed. 242; Illinois Surety Co. v. John Davis Company et al., 244 U. S. 376, 37 Sup. Ct. 614, 61 L. Ed. 1206; Brogan v. National Surety Co., 246 U. S. 257, 38 Sup. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776.

[2] This case ultimately turns upon the meaning of "final settlement." The Circuit Court of Appeals of the Second Circuit in the case of United States v. Robinson et al., 214 Fed. 38, 130 C. C. A. 432, said:

"We take it that these italicized words ["final settlement"] refer to the time when the proper government officer, who has the final discretion in such matters, after examination of the facts, satisfies himself that the government will accept the work, as it is, without making any claim against the contractor for unfinished or imperfect work, damages for delay or what not, and records that decision in some orderly way."

It is admitted that the chief of the Bureau of Yards and Docks was the government officer who had the final discretion to accept the work as completed without making further claims against the contractor for unfinished or imperfect work. Was the letter of August 28, 1920, which adjusted the amount of liquidated damages and finally fixed the amount for which the voucher was subsequently drawn and paid, an orderly record of that fact? In the case of Illinois Surety Co. v. Peeler, 240 U. S. 214, 36 Sup. Ct. 321, 60 L. Ed. 609, the Supreme Court in defining "final settlement" used many expressions which greatly illumine the facts in this case. The time allowed for the government to bring suit in that case began to run "when the contract had been completed and the government in its final adjustment and settlement according to established administrative methods had determined what amount, if any, was due." Final settlement, therefore, is the determination by administrative methods of what amount is due. The letter in the case at bar was the record of the determination by the proper officer of the amount due. That amount was never changed, and is admittedly correct. "The word 'settlement' in connection with public transactions and accounts has been used from the beginning to describe administrative determination of the amount due." "Settlement in connection with public contracts and accounts * * * has a well-defined meaning as denoting the appropriate administrative determination with respect to the amount due." "We think that the words 'final settlement' in the act of 1905 had reference to the time of this determination when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority." As above stated, there is no question but that the proper administrative officer in the letter of August 28, 1920, finally fixed the amount to be paid. This amount was determined by the chief of the Bureau in the usual and orderly administration of the duties of his office in such cases. The voucher prepared on September 2, 1920, and approved on Sep-

tember 15, 1920, in no way changed and so did not determine the amount fixed on August 28, 1920, but only carried out the former administrative determination. No other previous act or determination can be considered the date from which the six months within which the United States may institute proceedings began to run, for the reason that no other determination was the final determination.

The Peeler Case, supra, related to the building of a post office at Aiken, S. C. On August 21, 1912, the supervising architect, having received the certificate of the chief of the technical division of the office that all work embraced in the contract had been satisfactorily completed, made his statement of the amount finally due and recommended that only actual damages (as stated) be charged against the contractor, and that the proper voucher be issued to him for the balance. This recommendation was approved on the same day and actual damages charged accordingly by direction of the Secretary of the Treasury. The court said:

"This, in our judgment, was the 'final settlement' of the contract within the meaning of the act."

But the voucher containing the amount due the contractor in accordance with that "final settlement" was not prepared until August 26, five days after, and was thereafter approved. Consequently the date of the approval of the voucher was not the date of the final determination or final settlement of the amount due the contractor.

Mr. E. H. May, who was technical assistant in the Bureau of Yards and Docks, and had charge of matters relating to public works contracts under the cognizance of the Bureau, testified that the letter of August 28, 1920, "settled all questions with reference to this contract" and "that letter was the final action of the Bureau authorizing settlement of the contract." The Treasury Departmental Circular No. 45, September 12, 1919, states with reference to the date of final settlement that:

"The Department treats as the date of final settlement mentioned in said acts (1894 and 1905) the date on which the Department approves the basis of settlement under such contract recommended by the supervising architect, and orders payment accordingly."

In our opinion the letter of August 28, 1920, was the approval of the "basis of settlement" and the direction to prepare the voucher in accordance therewith was the virtual order to pay accordingly. This is the substantial question raised in the case. We have considered and resolved the other contentions raised by defendants against them.

The judgment of the District Court is reversed, and a new trial awarded.

BUFFINGTON, Circuit Judge, did not take part in the consideration or decision of this case.